# RANSOM GARDNER

*v.*

# ROBERT DIEDERICHS.

1. PRIORITY OF LIEN — *as between several notes secured by the same mortgage, and maturing at different times.* It has been held, that, where several notes are secured by a mortgage, in the absence of any special provision to the contrary, the notes are entitled to payment from the proceeds of the mortgage in the order of their maturity.

2. This ruling rests upon the fact, that the holder of the note first maturing, without being vested with any special equity by reason of the capacity in which he holds the paper, as assignor, for instance, may foreclose for non-payment, without waiting for the succeeding notes to mature. The power to do this implies a priority of lien in the notes first falling due.

3. This principle is applied in this case, where a deed of trust was given to secure several notes, falling due at different times and payable to different persons.

4. But where the interest on the notes last maturing is payable annually, the installments of such interest as may fall due at the same time the notes

first maturing became due, will be placed on an equal footing with them in respect to payment out of the proceeds of the mortgage.

5. CONSTRUCTION *of a trust-deed — as to the time of the maturity of notes secured by it.* Where a deed of trust, which is given to secure several notes, payable at different times and to different persons, simply authorizes the trustee, " in case of default in the payment of said notes, or any part thereof, or the interest accruing thereon," to sell " the premises, or any part thereof," and apply the proceeds to the payment of " the amount due on said notes," and to render the overplus, if any, to the grantor, it will not be construed as meaning that, in the event of a sale on the falling due of the notes first maturing, all the notes shall be deemed to be due; but the notes will be held to mature in the order and at the times specified on their face, and subject to the principle that the notes first maturing have a priority of lien on the trust fund.

6. DISPOSITION OF THE OVERPLUS — *where there is a sale before all the notes become due.* Whether a court of chancery would protect the holder of the notes which were not due at the time of a sale under the deed of trust, by staying the payment of the surplus fund to the grantor till security could be given that it would be held subject to the lien, the court do not decide; but, at all events, the trustee would not, under such a deed of trust as is mentioned, have the right to apply the surplus on debts not due, nor would a court of chancery compel him to do so.

7. CONTRIBUTION *as between tenants in common, for repairs and improvements.* One tenant in common can make another, at common law, contribute to such repairs to a house or mill as are necessary to its preservation or use. Beyond that the right to contribution has not ordinarily been carried.

8. IMPROVEMENTS AND TAXES — *how compensated — as between two mortgagees, or tenants in common.* The owner in fee of one-half of a mill property, executed a deed of trust thereon to secure debts owing to two persons, severally, one of the creditors being the owner of the other half, who, after the execution of the deed of trust, went into possession and run the mill and made valuable improvements thereon and paid taxes. On a bill filed by the other creditor to foreclose the deed of trust, it was held, that, while the party thus making the improvements might not be able to maintain a bill for contribution against the other *cestui que trust* for more than the repairs necessary to preserve the property, yet, as the estate of the grantor in the deed of trust was to be sold, it was but equitable, that, so far as the price which it might bring at the sale should be enhanced by the improvements, the party making them should be refunded, and he should also be allowed for taxes.

9. RENTS AND PROFITS — *as between the same.* And as against the sums so allowed for improvements and taxes, he should be charged reasonable rents and profits upon one-half the mill, independently of his improvements.

10. PRIORITY *of the claim for improvements.* The amount found due for improvements would be first paid out of the proceeds of the sale under the foreclosure of the deed of trust, and then the notes secured thereby, in their proper order.

Appeal from the Circuit Court of Grundy county; the Hon. Jesse O. Norton, Judge, presiding.

On the 24th of February, 1860, I. B. Hymer & Co., a firm consisting of Isaac B. Hymer and Addison Weeks, being indebted to Robert Diederichs and Ransom Gardner, severally, executed to the former their two promissory notes for the sum of $1,200 each, one payable one year and the other eighteen months after date, and to Gardner their two other notes, one for the sum of $1,500, payable two years from date, and the other for $1,800, payable two years and six months from date; all the notes bearing interest at ten per cent, payable annually.

On the same day, Hymer and Weeks and their wives, for the purpose of securing those notes, conveyed to a trustee an undivided one-half interest in certain real estate, situate in the town of Minooka, in Grundy county. The trust-deed was as follows:

" This indenture *Witnesseth*, that Isaac B. Hymer and Permelia L., his wife, and Addison Weeks, Eva L., his wife, of Chicago, Cook county, Illinois, grantors herein, in consideration of the indebtedness hereinafter mentioned, and one ($1) dollar to them paid by Sylvester Lind, of Chicago, Cook county, Illinois, grantee, the receipt whereof is hereby acknowledged, do hereby grant, bargain, sell, remise, release and convey unto the said grantee the following described lots, or parcels of land, situate in the county of Grundy and State of Illinois, to wit: The undivided half of village lots number three (3) and four (4), in block number ten (10), in village Minooka, in said county of Grundy, situated in section number one (1), town number thirty-four (34), to have and to hold the same, with all the privileges thereunto or in anywise appertaining, and all the estate, right, title, interest, claim or demand, in and to the same, either now or which may be hereafter acquired, unto the said grantee, his heirs and assigns in trust, nevertheless, for the following purposes: Whereas, the said grantor herein is justly indebted upon four certain promissory notes, bearing even date herewith, payable two of them to the order of Robert Diederichs, for the sum of twelve

hundred dollars each, with interest at ten per cent, payable annually at the bank of J. M. Adsit, Chicago, Illinois, one due in one year and the other in eighteen months from the date thereof, with exchange on New York city. And two of said notes being payable to the order of Ransom Gardner, one for fifteen hundred dollars, due two years from date with interest annually at ten per cent, and one note for eighteen hundred dollars due two years and six months from date, with interest at ten per cent, payable annually; all of said notes being signed by said grantors under their firm name of I. B. Hymer & Co. Now, in case of default in the payment of said notes, or any part thereof, or the interest accruing thereon, according to the tenor and effect thereof, or in the payment of any taxes or assessments, ordinary or special, which may be levied or assessed against said premises during the continuance hereof, on the application of the legal holders of said notes, or of either of them, the said grantee, Sylvester Lind (full power being hereby given), or his legal representatives, after having advertised such sale thirty days in a newspaper published in said Grundy county, or by posting up written or printed notices in four (4) public places in the county where said premises are situate (personal notice being hereby expressly waived), shall sell the said premises, or any part thereof, and all the right and equity of redemption of the said grantors, their heirs, executors, administrators, or assigns, therein at public vendue, to the highest bidder, for cash, at the court-house door in said Grundy county, at the time appointed in said advertisement; or may adjourn the sale from time to time at discretion, and as the attorney of the said grantors, for such purpose hereby constituted irrevocable, or in the name of the said grantee or his legal representatives, shall execute and deliver to the purchaser or purchasers thereof deeds for the conveyance in fee of the premises sold, and shall apply the proceeds of sale, 1. To the payment of expenses for advertising, selling and conveying as aforesaid, including attorney's fees; 2. The amount due on said notes; 3. Rendering the overplus, if any there be, to the said grantors or their legal representatives, at

11—41ST ILL.

the office of the said grantee in Chicago, Illinois; and it shall not be the duty of the purchaser to see to the application of the purchase-money: *Provided*, that the said grantors and their heirs and assigns may hold and enjoy said premises and the rents, issues and profits thereof until default shall be made as aforesaid, and, that, when the said notes and all expenses accruing hereby shall be fully paid, the said grantee, Sylvester Lind, or his legal representatives, shall reconvey all the estate acquired hereby in the said premises, or any part thereof, then remaining unsold, to (and at the cost of) the said grantors or their heirs or assigns; and the said Hymer & Weeks, grantors, covenant with the said grantee and his legal representatives and assigns, that they are seized in fee of the said premises and have good right to convey the same in form aforesaid; that they are free from all liens or incumbrances of whatever name or nature, and that they will warrant and defend the same against all claims whatsoever, and will pay all taxes or assessments levied or assessed on the said premises, or any part thereof, during the continuance hereof, and pay the same ten days before the day of sale therefor.

" Witness the hand and seal of the said grantors, this 24th day of February, 1860."

At the time of the making of this deed of trust, there was a flouring-mill on the premises embraced therein, nearly completed.

The said Gardner was the owner in fee of the other half of the property, and soon after the execution of the deed of trust he went into possession, made valuable improvements thereon, and put the mill in operation, and paid the taxes on the property.

On the 1st day of March, 1861, the notes secured by the deed of trust remaining unpaid, Diederichs exhibited his bill in chancery in the court below, praying a foreclosure of the deed of trust, making the grantors in the deed and Gardner parties defendant. Diederichs claims that he has a priority of lien on the trust fund for the payment of his notes, by reason of their maturing prior to those given to Gardner.

Gardner, on the contrary, insists, that, by the terms of the deed of trust, properly construed, in the event of a sale of the property, all the notes should be deemed to be due, and entitled to payment out of the proceeds of the sale *pro rata.*

Gardner also filed a cross-bill, setting up a claim for the value of the improvements he had made on the premises and the taxes paid thereon, insisting such claim was prior in point of right to the notes secured by the deed.

Upon the hearing the court decreed that Gardner's cross-bill be dismissed, and, the master having reported the amount due to Diederichs and Gardner, respectively, the court further decreed as follows :

"And it appearing to said court, that there was due to said complainant, Robert Diederichs, at the date of said report, for principal and interest on the notes payable to him, mentioned in said original bill of complaint and secured as herein stated by the trust-deed in said original bill described, the sum of three thousand three hundred sixty $\frac{72}{100}$ dollars, and that there was at the date of said report due, to the defendant Gardner, for principal and interest on the notes payable to him, mentioned in said original bill and secured in like manner by said trust-deed, the sum of four thousand six hundred and eighty and $\frac{4}{100}$ dollars ; and it further appearing to the court, that there is due to the said defendant Gardner the further sum of fifty-five $\frac{74}{100}$ dollars, moneys by him paid since the date of said trust-deed as taxes upon the property conveyed by the same ; the respective counsel for the several parties hereto in open court agreeing and consenting that the amount paid for such taxes may be made a prior charge upon said property, and it further appearing to the court, that the two notes and the interest thereon, mentioned in said original bill and made payable to said complainant Diederichs are entitled to a priority of payment over those also mentioned in said original bill, made payable to the defendant Gardner." Decree provides after payment of costs, etc., for application of proceeds of sale between the parties as aforesaid.

From that decree Gardner took this appeal. The questions arising on the assignment of errors, are, first, were the notes first maturing entitled to the priority in payment which was given them in the decree? second, and, if that be so, should not the annual interest upon the Gardner notes which became due on the maturity of the first of the Diederichs notes, have been placed on an equal footing therewith? and, third, as to the correct rule in relation to compensation to Gardner for the improvements made by him on the property conveyed by the trust-deed.

Mr. GEORGE C. CAMPBELL, for the appellant.

The rule is recognized, as laid down in *Vansant* v. *Allmon*, 23 Ill. 35, and *Frink* v. *McReynolds*, 33 id. 486, that, where several notes, payable at different times, are secured by a mortgage, in the absence of any special provision to the contrary, the notes are entitled to payment in the order of their maturity. But of course the parties are competent to stipulate that all of the notes shall be paid *pro rata* upon sale of the property, and where they do so stipulate the court will not by construction make a new contract for the parties. 2 Pars. on Con. 500; Chit. on Con. 74.

The trust-deed in this case does, I think, stipulate that the notes shall be paid *pro rata*.

The clause expressing the intention of the grantor is as follows:

"Now in case of default *in the payment of said notes or any part thereof, or the interest accruing thereon, or in the payment of any taxes assessed, etc.,* on application of the legal holders of said notes or *of either of them,* the said grantee shall sell, etc., and shall apply the proceeds of sale, first, to the payment of advertising, selling, etc; second, the amount due on said notes; and third, rendering the overplus, if any there be, to the grantors."

The interest upon *all* of the notes is payable annually, and at the end of the first year there would come due to Diederichs

| | |
|---|---|
| 1st note for | $1,200 |
| Interest on both notes, | 240 |
| | $1,440 |

And to Gardner, interest on his two notes, $330.

And, if either of these amounts, or any part of either, should be unpaid, then Gardner or Diederichs might apply to trustee and have him sell and pay all of the notes; that is, on such default all of the notes were to be treated as due, and were to be paid together.   So too, if, before any of the notes or interest became due, there should be taxes assessed against the property and not paid by mortgagor, then, upon application of either Gardner or Diederichs, all of the property should be sold and all of the notes paid ;  that is, upon the happening of this neglect to pay taxes, all of the notes should be put upon the same basis, — should all be treated as due and all be paid.   If, by the tenor of the notes, they had all fallen due upon the same day, there could of course be no priority.   It is otherwise when by the terms of the mortgage a provision is made, that, upon the happening of some event, they shall all be treated as due.   It is just as much the contract of the parties when expressed by the terms of the trust-deed as by the terms of the notes.

The provision in the deed, that, upon sale, the trustee shall pay the notes and render the overplus, if any, to the grantor, excludes the idea that only one note shall be paid, or that only those then payable by their terms shall be paid; for, if such were the case, the property might be sold for more than the amount then payable by the terms of the notes themselves, and the overplus would have to be rendered to the mortgagor, and the security of the subsequent notes would be entirely gone, for there is no redemption under sale on the deed.   The provision, that, upon default of payment of notes or any part thereof, either party may apply and have a sale, also excludes the idea that only the notes then payable by their terms shall be paid.

It was also erroneous to dismiss the cross-bill of Gardner. He was, upon the evidence, entitled to a decree, that the amount expended by him for repairs and permanent improvements should be a lien upon the premises prior to the trust-deed. The possession of Gardner and the improvements made by him were open and notorious, and in law gave him a lien prior to that of the trust-deed. The parties for whose use the trust-deed was made have the same rights and are bound by the same equities as their grantor.

And, where one tenant in common puts permanent improvements upon the estate, at the request, or with the consent, or within the knowledge, of his co-tenant, he not objecting, the co-tenant must contribute to the payment, and the amount is a lien upon the estate. 4 Bouvier's Institutes, 247; Coke upon Littleton, 200 b; Bac. Abr. Joint Tenants, L. F. N. B., 127 a; 2 Fonblanque Eq., b. 2, ch. 4, § 2 g; *Lake* v. *Gibson*, 3 P. Williams, 158; *Town* v. *Needham*, 3 Paige, 545.

And it is natural equity, that, where a possessor of property in good faith puts permanent improvements thereon, he should be entitled to payment, and have a lien on the property therefor. Willard's Eq. 311; *Putnam* v. *Ritchie*, 6 Paige, 404; *Bright* v. *Boyd*, 1 Story, 478; 2 Story's Eq. Jur. § 799 and note.

Messrs. TYLER & HIBBARD, for the appellee.

The trust-deed having been given to secure two sets of notes falling due at different times, those to Diederichs first, and those to Gardner last, in case of resort to trust property to pay them, those to Diederichs must be first paid in full. What the notes on their face indicate follows from a proper construction of the trust-deed itself.

It has been held in numerous cases, that, where a mortgage has been given to secure several notes falling due at various times, and the notes are assigned to different holders, the one first maturing is to be first paid out of the mortgage property; the mortgage as to the several notes, being equivalent to so many successive mortgages. *Sargent* v. *Howe*, 21 Ill. 148;

*Vansant* v. *Allmon*, 23 id. 30; *Wood* v. *Trask*, 7 Wis. 566; *State Bank* v. *Tweedy*, 8 Blackf. 447; *Guathmeys* v. *Ragland*, 1 Rand. (Va.) 466; *Hough* v. *Osborne*, 7 Ind. 140.

But it is contended by the appellant, that, by the terms of the trust-deed, on a default in the payment of the notes secured by it, or either of them, they were at once to become due, and thenceforward to stand on the same footing as if originally made payable on the same day. It is observable from the language of the deed, however, that such was not its scope. It provided, that, in case of default of payment, "on the application of the legal holders of the said notes, or of either of them, the said grantee, Sylvester Lind, * * * shall sell the said premises * * * and shall apply the proceeds of sale to the payment of, first, the expenses of advertising, etc., * * * second, the amount due on said notes, rendering the overplus," etc. Not a word is said here about the notes becoming due, but merely that, if a default and sale under the power in the deed should take place, the trustee might retain the money necessary to pay all the notes, and render the overplus to the grantor in the deed. That this is the proper construction of the power in the deed, has been expressly ruled in a case similar in its terms. *Holden* v. *Gilbert*, 7 Paige, 208.

The priority of the notes of the appellee follows, also, from the well-settled rule, that a mortgage given to secure separate debts due to several persons is several in its nature, as much so as if several instruments had been simultaneously executed. *Thayer* v. *Campbell*, 9 Mo. 280; *Burnett* v. *Pratt*, 22 Pick. 556; *Eccleston* v. *Clipsham*, 1 Saund. 280.

The claim made by Gardner for repairs and improvements is against both Diederichs, as co-mortgagee, and Hymer & Co., as mortgagors, and asserts a prior right to be paid to the extent of the whole property. It is evident that Diederichs is in no worse position than are Hymer & Co., with respect to such claim. How, then, does the claim stand as against Hymer & Co., the mortgagors? Gardner may be supposed to have been in possession of the mortgaged premises, under a contract with the mortgagors, and not as mortgagee, in which case Hymer &

Co. would not be liable to account for repairs and improvements. Fisher on Mort. 333–338.

If Gardner be supposed to have been in possession under his mortgage, how then did he stand related to the mortgagors in reference to repairs and improvements? The rule as to repairs is, that a mortgagee in possession is not only authorized, but bound to make such repairs as are necessary to keep the property up to the condition it was in when he took possession, natural wear and tear excepted, and that he will be allowed therefor. *Smith* v. *Sinclair*, 5 Gilm. 108; *McConnell* v. *Holobush*, 11 Ill. 70; *Bradley* v. *Snyder*, 14 id. 263; *McCumber* v. *Gilman*, 15 id. 381; *Benedict* v. *Gilman*, 4 Paige, 58; *Exton* v. *Greaves*, 1 Vern. 138; *Talbott* v. *Braddill*, id. 183; *Russell* v. *Blake*, 2 Pick. 505; *More* v. *Cable*, 1 Johns. Ch. 385.

The general rule as to improvements is, that no allowance is made for them. Thus, in the following cases, a claim for improvements made by mortgagee in possession was disallowed. *Smith* v. *Sinclair*, 5 Gil. 108; *Russell* v. *Blake*, 2 Pick. 505; *Quin* v. *Britain*, 1 Hoff. Ch. 353; *Clark* v. *Smith*, Saxton's Ch. (N. J.) 121; *Dougherty* v. *McColgan*, 6 Gill. & J. 275; *Bell* v. *Mayor*, 10 Paige, 49; *Moore* v. *Cable*, 1 Johns. Ch. 385.

Claims for improvements, however, have been allowed in certain cases, by way of exception to the general rule. KENT says: "But lasting improvements have been allowed in England, under peculiar circumstances, and they have been sometimes allowed and sometimes disallowed in this country." 4 Com. 167.

All the cases I have been able to find, in which such a claim has been allowed, including those cited by Kent in support of the above position, are the following: *Exton* v. *Greaves*, 1 Vernon, 138; *Talbott* v. *Braddill*, id. 183; *Quarrell* v. *Beckford*, 1 Mad. Ch. 151; *Norton* v. *Cooper*, 39 Eng. L. & Eq. 130; *Conway's Exrs.* v. *Alexander*, 7 Cranch, 218; *Ford* v. *Philpot*, 5 Har. & J. 312; *Cummings* v. *Noyes*, 10 Mass. 433, as cited and explained in *Russell* v. *Blake*, 2 Pick. 505.

In relation to all of the above cases, except that from 7 Cranch, which has no apparent bearing on the case, the allow-

ance for improvements was made under the following circumstances : The mortgagee in possession had made the improvements under a *bona fide* belief that he had a full and perfect title, either under a decree of foreclosure, or under a purchase of the equity of redemption, at sheriff's sale — proceedings which were afterward held to be erroneous. The courts, under those peculiar circumstances, did not allow the mortgagors to redeem without paying for the improvements.

In two cases, in Illinois, this court has recognized the same distinction, and, it being doubtful what the facts were, has referred the cases to a master in chancery, to inquire into the circumstances under which the improvements were made, intimating a purpose to allow for the improvements, if made in good faith, under a belief that the title of the mortgagees was good. *McConnel* v. *Holobush*, 11 Ill. 70 ; *McCumber* v. *Gilman*, 15 id. 381. Under no circumstances, however, will an allowance be made for improvements, unless they were judiciously made. It is a matter of discretion with the court, and not of strict right. *McConnel* v. *Holobush*, 11 Ill. 70 ; *McCumber* v. *Gilman*, 15 id. 381.

Gardner, going into possession, we will still suppose, as mortgagee, is liable to the mortgagors for a reasonable rent of the premises. He must account for the rents and profits actually received, or which might have been received by reasonable care and prudence. *McConnel* v. *Holobush*, 11 Ill. 70 ; *Van Buren* v. *Olmsted*, 5 Paige, 9.

Out of the rents and profits a mortgagee is bound to keep the estate in repair. It is, perhaps, also his duty, out of the rents, to pay the taxes. As to the latter, see *McCumber* v. *Gilman*, 15 Ill. 381 ; *Foure* v. *Winans*, 1 Hop. Ch. 283 ; *Clark* v. *Smith*, 1 Saxton's Ch. 121.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court :

The notes to Diederichs and those to Gardner were secured by the same deed of trust, those to Diederichs falling due in twelve and eighteen months, those to Gardner in twenty-four

and thirty months. But the interest on all the notes was payable annually. It has already been decided by this court, that, where several notes are secured by a mortgage, in the absence of any special provision to the contrary, the notes are entitled to payment from the proceeds of the mortgage in the order of their maturity. *Vansant* v. *Allmon*, 23 Ill. 35.

In that case the note in controversy had been assigned, but the decision was not placed on any special equity acquired by the assignee. It rests upon the fact that the holder of the note first maturing may foreclose upon non-payment without waiting for the succeeding notes to mature. *Sargent* v. *Howe*, 21 Ill. 148.

The power to do this implies a priority of lien in the notes first falling due. This deed of trust does not provide, that, in the event of sale, all the notes shall be deemed to be due. It simply authorizes the trustee, in case of default, to sell, and out of the proceeds pay the amount due.

The counsel for plaintiff in error urges, that, unless, all the notes could be considered as due in case of sale, then the holder of the notes not due would lose the benefit of the security, even if there should be a surplus fund, as the trustee is directed to render the surplus to the grantor. Whether a court of chancery would relieve against this hardship by staying the payment of the surplus fund, till security could be given that it would be held subject to the lien, it is not now necessary to inquire. For the purposes of the present case it is sufficient to say that the trustee would not, under this deed of trust, have the right to apply the surplus on debts not due, nor would a court of chancery compel him to do so. Courts do not make contracts for parties, nor require them to pay their debts before they have agreed to pay them. The prudent method in taking securities of this kind is to provide against all these contingencies by the express provisions of the deed.

There is, however, according to the principles here laid down, an error in the decree. The interest on the Gardner notes was payable annually, and fell due at the same time with the first note to Diederichs. The decree should have directed this inter-

est for the first year, amounting to $330, and the amount of the first Diederichs' note to be paid *pro rata*, and next the second Diederichs' note, which matured in eighteen months, and thirdly the Gardner notes.

Gardner has been in possession of the mill, and made valuable improvements thereon since the execution of the deed of trust; and as the deed of trust covered only an undivided half of the mill, while he was himself the owner in fee of the other half, he claims to have made these improvements as tenant in common, and to have a lien on the entire premises for the amount expended, which should take precedence of the deed of trust.

One tenant in common can make another, at common law, contribute to such repairs to a house or mill, as are necessary to its preservation or use. 4 Kent, 370. Beyond that the right to compel contribution has not ordinarily been carried; but the case before us falls within the principle of *Louvalle* v. *Menard*, 1 Gilm. 45. There the estate held in common had been sold under a proceeding in partition, and before the distribution of the money, the complainants filed their bill, alleging the erection, by their ancestor, of valuable improvements upon the land, in consequence of which it brought an enhanced price, and praying, that, in the distribution of the fund, they should be allowed for these improvements, so far as they had increased the sum brought by the property at the sale. The court held this was equitable, and remanded the case in order that proof might be taken upon this point. So in the case before us, although Gardner might not be able to maintain a bill for contribution against Diederichs for more than the repairs necessary to preserve the property, yet as the estate of Hymer & Co. is to be sold, it is but equitable, that, so far as the price which it brings at the sale shall be enhanced by the improvements for which Gardner has paid, he should be refunded. He should also be allowed for taxes, and as against these sums, should be charged reasonable rents and profits upon one-half the mill, independently of his improvements. These can be ascertained by determining, first, the value of the mill after completion, and what would have been a reasonable rent for it,

and, secondly, the value at the time the mortgage was made, and fixing the rent in proportion to the value at the date of the mortgage and after completion. Before these inquiries are made, however, the estate of Hymer & Co. in the mill should be sold according to the provisions of the deed of trust, and the money brought into court. The price it shall bring will serve as a basis for these inquiries. What it would have brought, independently of the improvements made by Gardner, cannot, of course, be ascertained with exactness, but the court will be able to render a decree that will do substantial justice to all parties. The amount found due for improvements will be first paid, and then the notes in the order above directed. The cause is remanded for further proceedings.

*Decree reversed.*