(No. 13007.—Decree affirmed.)

LOUISA UDSTUEN, Appellant, *vs.* JOHN D. ILLK, Appellee.

*Opinion filed February 18, 1920.*

1. DEEDS—*what undue influence is necessary to render deed invalid.* Undue influence means wrongful influence, and to render a deed invalid the undue influence must be connected with the execution of the instrument and be of a character to make the grantor express the will of another instead of his own.

2. SAME—*influence secured through affection will not invalidate deed.* Influence secured through affection is not undue influence which will invalidate a deed from the grantee's parents and which gives to the son more than is given to his brothers and sisters because the grantors believed the grantee deserved it.

3. SAME—*when record does not present question of delivery of deeds.* On appeal from a decree dismissing a bill to set aside deeds, where the master makes no report on the question of delivery and no exception or objection is made to the report on that question, and where the bill as abstracted does not contain any allegation that the deeds were not delivered, the record does not present the question of delivery for decision by the Supreme Court.

APPEAL from the Circuit Court of Vermilion county; the Hon. JOHN H. MARSHALL, Judge, presiding.

FRED DRAPER, O. M. JONES, and SWALLOW & BOOKWALTER, for appellant.

ACTON & ACTON, and RALPH B. HOLMES, for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is an appeal from a decree denying the relief prayed in a bill in chancery and dismissing the bill for want of equity. The bill as originally filed prayed that a certain deed executed by Gottlieb Illk and wife to John D. Illk, a son, be set aside on the ground that Gottlieb Illk was mentally unsound, that he was unduly influenced by the grantee to make the deed and that the deed was never delivered. Before the case proceeded to final decree an amended bill was filed, in which all the heirs of Gottlieb Illk except John

D. Illk were complainants, praying that the deed mentioned in the original bill be set aside; also two other deeds from the same grantors to the same grantee in trust for the use and benefit of two sons of the grantors who were under disability; also a deed from the same grantors to another son, William F. Illk, who was joined as a complainant in the bill. All the lands described in the deeds above referred to were situated in Vermilion county, Illinois, and the deeds were executed March 9, 1914. The bill also prayed that a deed executed by Gottlieb Illk and wife September 26, 1916, for 720 acres of land in Kansas, to their son John in trust for the use and benefit of the grantors' five daughters named in the deed be set aside and for partition of the lands in Vermilion county. The grounds alleged in the bill for the relief prayed were, that the grantor Gottlieb Illk was mentally unsound and incapable of making a valid deed and that he was unduly influenced to make the deed by his son John, the defendant. The defendant answered the bill, denying the material allegations upon which the right to relief was based, and the cause was referred to a special master in chancery to take the evidence and report his conclusions. The master reported that complainants had not proved that Gottlieb Illk was insane or mentally incapable of executing the deeds but they had proved by the greater weight of the evidence that he was induced to execute them by the undue influence of the grantee, and he recommended that a decree be entered setting the deeds aside on that ground. Complainants excepted to the master's report and conclusion on the issue of the unsoundness of mind of Gottlieb Illk and defendant excepted to the report and conclusion on the issue of undue influence. The chancellor overruled complainants' exceptions, sustained the exceptions of defendant, and entered a decree dismissing the bill for want of equity. This appeal is prosecuted from that decree by Louisa Udstuen.

Gottlieb Illk was born in Germany in 1839 and was married there. He came to this country in 1874 and brought

with him about $6000. He died intestate in October, 1916, leaving a widow, who has since died, and nine children,— five daughters and four sons,—his only heirs-at-law. One of the daughters, Christina F. Fithian, died pending this litigation and her heirs were substituted as parties complainant. The surviving eight children are: Louisa Udstuen, Anna D. Miller, Lena E. Dalbey, Lydia Balbach, Christian J. Illk, J. Gottlieb Illk, William F. Illk and John D. Illk. Gottlieb Illk acquired over 300 acres of land in Vermilion county, Illinois, and 720 acres in the State of Kansas. On March 9, 1914, he and his wife executed a deed to their son William for 80 acres of Illinois land, and a deed to defendant, John D. Illk, for 115 acres of land in Illinois. At the same time they also executed to John two deeds as trustee, for the use and benefit of two insane sons of the grantors, for the remainder of the Illinois land. One of the deeds to the trustee conveyed 55 acres in trust for the use and benefit of Christian J. Illk and the other deed conveyed 40 acres in trust for the use and benefit of J. Gottlieb Illk. In each of said deeds a life estate was reserved to the grantors and to the survivor of them. On the 26th of September, 1916, Gottlieb Illk and wife conveyed all of the Kansas land in trust for the use and benefit of the grantors' five daughters, who were named in the deed. In all of said deeds provision was made for the disposition of the land at the death of the person or persons for whose use it was held in trust by John D. Illk.

In all about one hundred witnesses testified on behalf of the respective parties on the issues of the mental capacity of Gottlieb Illk and that he was unduly influenced by the defendant to make the deeds. It would serve no useful purpose to discuss in detail the testimony on the issue of the mental capacity of Gottlieb Illk. The proof shows he was a rather eccentric character. He was a believer in certain theories of a German preacher about the cure of diseases, the driving out of evil spirits by prayer and faith and divine

healing, but in our view the proof overwhelmingly shows he was mentally capable of transacting business and of disposing of his property by deed or will. This seems to be rather conclusively shown by the fact that, starting with $5000 or $6000, he accumulated over 1000 acres of land and personal property, worth more than $100,000. Much reliance is placed upon the claim that insanity was hereditary in his family. The proof shows that two of his four sons are now in an insane asylum, and four of his five daughters are or have been insane and two of them have been in an asylum. The sons Gottlieb and Christian were parties complainant by their next friend, and three of the daughters were parties by their respective conservators. It was further proved that certain collateral relatives of Gottlieb Illk were insane. While this is a remarkable record in one family, it is not sufficient to establish the mental incapacity of Gottlieb Illk over the clear and convincing weight of the testimony that he was capable of transacting, and did transact, a large amount of business intelligently and successfully. The chancellor correctly overruled complainants' exceptions to the finding and report of the master that complainants failed to establish by proof the allegations of the bill that Gottlieb Illk was mentally incapable of making the deeds.

Defendant is about thirty-three years old and unmarried. He lived with his parents up to the time of their death. Appellant contends the execution of the deeds was the result of undue influence exercised by defendant; also, that a fiduciary relation existed between defendant and his father, and that the burden of proving the fairness of the transaction is on defendant. Gottlieb Illk spoke English imperfectly and could not write it at all except to sign his name. Some of his children did most of his writing, and in the later years of his life defendant did most of it. He apparently never had much writing to do at his home except to sign checks, which he always did himself. He deposited

his money in bank in his own name. It is undoubtedly true that he did repose confidence in and in some measure depend upon defendant in the later years of his life, but the proof utterly fails to show that the deeds were made through the undue influence of defendant or that he had anything to do with originating the scheme of Gottlieb Illk for the distribution of his property. In 1912 he made a will disposing of all of his lands to his children in the same way the deeds disposed of them. He had previously conveyed to his son William 15 acres of Illinois land, and in the will he devised the rest of it in the same manner it was conveyed by the deeds and to the same persons. In 1914, as we understand, when he made the deeds for the Illinois land, he made another will devising the Kansas lands substantially the same as in the former will. On September 26, 1916, he made the deed for the Kansas lands to John D. Illk, trustee for the daughters during their lives, and disposed of the fee in the same manner the wills had disposed of it, except a change in the disposition of the fee as to the one-fifth interest of Louisa Udstuen. The wills were destroyed by Gottlieb Illk. The proof fails to show that Gottlieb Illk was acting under the influence of or the advice of defendant when he executed the wills and deeds. It would be strange if defendant dominated and controlled his father to such an extent that he could cause him to dispose of his land in the manner the defendant wanted him to dispose of it and that the deeds were the result of his influence and control over his father, that he did not cause him to make a different disposition of the land. The only benefit defendant received was the 115 acres. The other deeds were to him as trustee, for the benefit of his brothers and sisters. It is said he received a substantially larger share in value of the land than his brothers and sisters, and this is true; but the record shows he had lived with his parents all his life. They were old people and he appears to have been a kind and dutiful son. No claim is

made that Mrs. Illk was insane. In fact, it is asserted that she was the "brains of the family." She signed all the deeds with her husband and presumably was satisfied with the distribution of the property to their children.

While there was some inequality in the distribution of the land among the children of Gottlieb Illk, the conditions existing, if they did not absolutely justify it, were such that it cannot be said it was unreasonable. The undue influence which will render a deed invalid must be connected with the execution of the instrument and be of a character to deprive the grantor of free agency. Undue influence means wrongful influence; which makes the grantor express the will of another and not his own. (*Sargent* v. *Roberts,* 265 Ill. 210; *Dowie* v. *Sutton,* 227 id. 183; *Burt* v. *Quisenberry,* 132 id. 385.) All that the evidence shows is that defendant was given land of greater value than was given any of his brothers and sisters, but there is good reason for the inference that this was the result of affection of the grantors for defendant and the belief in his being able to properly take care of it, as well as that he deserved it. Influence secured through affection is not undue influence which will invalidate a deed. *Dowie* v. *Sutton, supra; Burt* v. *Quisenberry, supra; Yoe* v. *McCord,* 74 Ill. 33.

It is argued by appellant that the deeds were never delivered. The master made no finding and report on that question, and it is not shown by the abstract or asserted in the briefs that any objections were filed to the report with the master or that any exception was filed to the master's report on that question before the chancellor and a ruling secured. The amended bill, on which the case was tried and which is the only bill set out in the abstract, does not, as abstracted, contain any allegation that the deeds were not delivered. The record therefore does not present that question for decision. (*Hurd* v. *Goodrich,* 59 Ill. 450; *Springer* v. *Kroeschell,* 161 id. 358; *Marble* v. *Thomas,* 178 id. 540; *Dolese* v. *McDougall,* 182 id. 486.) It may not be improper

to say we have read the evidence upon that question, and, in our opinion, if the question had been preserved it does not sustain appellant's contention.

The decree of the circuit court is affirmed.

*Decree affirmed.*