Conrad M. Dreger, Appellee, v. Harvey L. Boyer et al., Appellees. Robert E. Anderson et al., Appellants.
Gen. No. 40,021.

Heard in the second division of this court for the first district at the April term, 1938. Opinion filed December 13, 1938.

OTTO FETTING, JAMES H. CRONIN, FRANCIS J. CUNEO, and HENRY N. SHABSIN, all of Chicago, for appellants.

COONEY & VERHOEVEN and JOSEPH A. WEBER, both of Chicago, for appellees.

MR. JUSTICE BURKE delivered the opinion of the court.

On February 5, 1937, plaintiff (appellee) filed his complaint in the superior court of Cook county seeking to foreclose a trust deed executed December 24, 1926, by Harvey L. Boyer and Mabel A. Boyer, his wife, on real estate in Cook county, to secure the payment of eight promissory notes numbered from 1-A to 8-H, inclusive, the first two for $750 each, the next

three for $500 each, and the last three for $4,000 each, notes 1-A and 2-B by their terms coming due December 24, 1929, and December 24, 1930, respectively, and notes 3-C, 4-D, 5-E, 6-F, 7-G and 8-H coming due December 24, 1931. There was no parity clause in the notes or trust deed. Plaintiff alleged that he was the owner of note 2-B and sought to foreclose as to the entire issue. He made the other noteholders parties by the name of ''Unknown Owners.'' Plaintiff proved, and the decree found, that he also owned principal note 1-A. Defendants Robert E. Anderson and Virginia I. Anderson, minors, by Gustav O. Anderson, their guardian, and James Murphy, who are appellants herein, filed answers and counterclaims and asserted therein that they were the owners of notes 7-G and 8-H and that the other six notes were extended by agreement beyond the maturity dates of notes 7-G and 8-H. Counterclaimants maintain that the extension of the other notes to a date beyond the maturity of notes 7-G and 8-H, all being secured by the same trust deed (containing no parity clause), postpones the right of the holder to receive payment of his debt from the security until the prior maturing notes are paid. The cause was referred to a master in chancery, who reported to the court that note 1-A was on December 24, 1929, by agreement extended to December 24, 1930, and on said day the time for payment was extended to December 24, 1931; that the time for payment of note 2-B was on December 24, 1930, by agreement extended to December 24, 1931, and on the latter day was again extended for a period of 3 years; that the time for payment of note 3-C was on December 24, 1931, extended for a period of 3 years; that the time for payment of note 4-D was extended from time to time, the last time on December 6, 1934, for a period of 4 years; that note 5-E was paid and canceled; that there was paid on account of the principal of note 6-F

the sum of $500, reducing the principal balance to $3,500, and the time for payment of the note was extended from time to time, the last time on December 24, 1934, for a period of 4 years; that the time for payment of principal notes 7-G and 8-H (owned by appellants) was never extended, and that the schedule of due dates on the unpaid notes as extended as found by the master is: "Note 1A due December 24, 1931; Note 2B due December 24, 1934; Note 3C due December 24, 1934; Note 4D due December 24, 1938; Note 6F due December 24, 1938; Note 7G due December 24, 1931; Note 8H due December 24, 1931." The master found that the notes were on a parity. Plaintiff filed an objection to the master's report, which reads: "For that the said Master has found that there was an attempt made by the Citizens State Bank of Chicago, acting as agent for the owners and holders of the unpaid notes, to extend certain of said notes, as they became due, and that some of said extensions were accepted by the owners and holders while other noteholders did not acquiesce; when in truth and in fact the Master should have found that the legal holder of the premises never agreed to any extension, and no valuable consideration was suggested or proven with reference to any of the notes. The Master's conclusion, however, in this regard, is correct, but the finding as to the evidence is not in accordance with the facts." The conclusion of the master is that some of the extensions were accepted by the noteholders while others did not accept the extensions. The counterclaimants also filed objections. In addition to objecting to the finding that the notes were on a parity counterclaimants objected to a finding by the master that the counterclaimants as noteholders were not entitled to have an allowance made for their attorneys' fees, and asked that the report be amended so as to allocate the fees to be allowed to plaintiff and to such holders and

owners of notes as had made proof showing that they were entitled to attorneys' fees. The master overruled the objections. On October 18, 1937, the following order was entered: ''This cause coming on to be heard upon the motion of Cooney and Verhoeven, attorneys for the plaintiff, Conrad M. Dreger, to approve the Master's report and decree of sale, and it appearing to the Court that objections were filed to the Master's report by James Murphy and Gustav O. Anderson, guardians of the estate of Robert E. Anderson and Virginia F. Anderson, by their attorneys, and the Court having jurisdiction of the subject matter hereof and being fully advised in the premises, Does Hereby Order, Adjudge and Decree, that the said objections be and the same are hereby made exceptions to the said reports and decree of sale, and hearing on said exceptions are hereby set down on the eighth day of December, 1937, at 11 A. M.'' Thus it will be observed that the objections of counterclaimants were allowed to stand as exceptions but that no further action was taken on the objection of plaintiff. In that state of the record the assumption is that plaintiff had no criticism of the report of the master. After argument on the exceptions of counterclaimants a decree was entered substantially as recommended by the master, to reverse which this appeal is prosecuted. Appellees asked leave to file a reply to the reply brief, which leave was denied. The proposed brief was attached to the motion. In order to be sure that we did not overlook any points, however, we read the proposed brief.

Counterclaimants urge that the extension of time for the payment of one note of a series, secured by the same trust deed, containing no parity clause, postpones the right of the holder to receive payment from the security until the prior maturing notes are paid. The general rule in this State is expressed in the fol-

lowing language from *Kuppenheimer v. Chicago Title & Trust Co.*, 163 Ill. App. 127, 134, 135:

"The rule that in the absence of an agreement to the contrary, notes are payable from the proceeds of the sale of mortgaged property in the order of their maturity, is predicated upon the fact that the holder of the note first maturing may foreclose upon non-payment without waiting for the succeeding notes to mature. *Sargent v. Howe*, 21 Ill. 148; *Gardner v. Diederichs*, 41 Ill. 158. In the case last cited it was said: 'The power to do this implies a priority of lien in the notes first falling due.'

"When the notes and trust deeds here involved were executed it may reasonably be presumed that the parties intended that the several notes would be paid at maturity. This was the contract, and we perceive nothing in the default clause which evidences a contrary intention. The provision whereby the holders of the notes were authorized to declare the notes to be due before their maturity by their terms only became operative in the event that the mortgagor and maker of the notes failed to comply with his contract.

"Notwithstanding the fact that the mortgages involved contained default clauses, some of which were operative automatically without any election by the holders of the notes, the *pro tanto* rule was announced and adhered to in the following cases: *Gardner v. Diederichs, supra; Koester v. Burke,* 81 Ill. 436; *Hurck v. Erskine,* 45 Mo. 484; *Marine Bank v. International Bank, supra; Leavitt v. Reynolds,* 79 Iowa, 348; *Horn v. Bennett,* 135 Ind. 158. In 2 Jones on Mortgages, sec. 1699, it is said: 'This rule of priority according to maturity is not affected by a provision in the mortgage whereby all the notes become due upon any default.' See also 27 Cyc. 1306, and 20 Am. & Eng. Enc. of Law, 1049.

"The clause in the mortgage providing for the distribution of the proceeds of a sale of the premises con-

tains no intimation that such distribution shall be made otherwise than the law directs in the absence of a special agreement to the contrary. The case of *Humphreys v. Morton,* 100 Ill. 592, cited by appellees, is not in point. In that case the court adhered to the *pro tanto* rule; but held it to be inapplicable because the bonds there involved matured simultaneously." Such being the rule, the question arises as to whether it is applicable to a factual situation such as is presented in the case at bar, where notes maturing prior to and concurrently with the notes owned by counterclaimants are extended. It would seem that in principle the law should be the same. The only case cited that approaches the proposition is *In the Matter of Estates of Lalla,* 362 Ill. 621. In that case the proposition arose in the probate court of Cook county in the matter of investing certain funds derived from the United States Veterans' Administration. The case involved the purchases of different securities. The guardian had, among other investments, purchased a so-called Anderson note, which was a first mortgage note for $500, part of an issue of sixteen notes aggregating $16,000, due serially on different dates. By a prior extension of all the unpaid notes, the one purchased by the guardian and another note had first maturity in the series. The trust deed contained no parity clause. The court held that where notes secured by a first trust deed containing no parity clause, were extended, the first maturing extended note had priority. Appellees do not make any contention to the contrary, but argue that there was no valid extension agreement. We find that there is abundant evidence showing valid extension agreements. Furthermore, appellees' own exhibits show that extension agreements were made. Moreover, it is too late for appellees to complain about the master's report. If they had any objections to the findings they should have filed the same before the chancellor so as to give him an opportunity to rule

thereon. They filed with the master the objection we have mentioned. The objection is ambiguous, and no order was entered that it stand as an exception.

"... It is well settled that where matters of fact are referred to a master for his determination, it is the duty of the parties, when notified, as was done here, to appear before him and there contest the matter, and if his findings are not, in their judgment, supported by the evidence, it is their duty to interpose their objections, so as to afford the master an opportunity to modify his report if it should happen to be wrong; and if in such case, after hearing the objections, the master declines to modify or change his report, it is the duty of the objecting parties, after it has been filed in court, to appear there and file exceptions to it; and when this course has not been pursued, and no sufficient reason is assigned for not doing so, as was the case here, the report of the master, when approved by the court, will be deemed in this court conclusive upon the questions covered by it." (*Jewell v. Rock River Paper Co.,* 101 Ill. 57, 68–69. See also *Marble v. Thomas,* 178 Ill. 540; *Hurd v. Goodrich,* 59 Ill. 450; *Udstuen v. Illk,* 291 Ill. 443, 448; *Johnson v. Voudrie,* 233 Ill. App. 572, 576.) As the record stands, appellees cannot voice any complaint as to the findings of fact of the master. We therefore turn to a further consideration of the points made by counterclaimants. The master found that note 1-A was extended to December 24, 1931, and counterclaimants urge that he should have made an additional finding that said note was again extended from December 24, 1931, to December 24, 1934. It would seem that the same evidence that induced him to make the findings as to the extensions of the other notes would support a similar finding as to note 1-A. However, a perusal of the abstract and record does not disclose any exception to the finding that the last extension of note

1-A was to December 24, 1931. Hence, under the rule above announced, the objection raised here cannot be considered. We are satisfied that the rule of law that where there is no parity clause the prior due notes should be first satisfied out of the security, applies with equal force to notes that become "prior due" by reason of extension agreements made on other notes.

Another of counterclaimants' contentions is that plaintiff is not entitled to a prior lien for attorneys' fees. The matter is governed entirely by the language of the instrument. We agree that unless the same contains language granting priority to attorneys' fees such fees are on a parity with other charges. The trust deed, however, does say that the fees "shall be taxed as costs and included in any decree that may be rendered in such foreclosure proceeding." Taxed costs have a priority, and we are of the opinion that the quoted language is sufficient to authorize priority as to solicitors' fees. The instant trust deed is not well suited for a split mortgage issue. It does not take into account many of the contingencies that may arise when the notes come into the hands of different, unrelated persons. The trust deed contains the following clause: "It is further agreed by the grantors for said grantors and for the heirs, executors, administrators and assigns of said grantors that in case a right of foreclosure or other right of procedure shall arise hereunder, in any of the manners above specified, the legal holder or holders of said principal notes or of any part thereof or the said Trustee for the benefit of such holder or holders shall have the right to bring such legal or equitable proceedings for the collection of moneys hereby secured as may be necessary; that all expenses and disbursements, paid or incurred in behalf of complainant in connection with the foreclosure hereof—including reasonable solicitor's fees, outlays for documentary evidence, stenographer's

charges, cost of procuring or completing an abstract of title showing the whole title to said premises embracing foreclosure decree—shall be paid by the grantors; *that the like expenses and disbursements, occasioned by any suit or proceeding wherein the trustee, or any holder of any part of said indebtedness, as such, may be a party, shall also be paid by the grantors; that such fees, expenses and disbursements shall be an additional lien and charge upon such premises secured by this deed, shall be taxed as costs and included in any decree that may be rendered in such foreclosure proceeding; whether decree of sale shall have been entered or not, shall not be dismissed, nor a release hereof given, until all such fees, expenses and disbursements and the costs of suit, including solicitor's fees, shall have been paid.''* (Italics ours.) Under that clause one noteholder does not have the right to bring a representative action and he may file the complaint only in behalf of himself and others who wish to join with him. All the noteholders may join or the trustee may foreclose for all of them. It is obvious that if plaintiff had the right to bring his complaint in behalf of all the noteholders it would be unnecessary for him to make any of them parties by the name and style of ''Unknown Owners.''

The final point raised by counterclaimants is that the chancellor erred in not allowing them fees for the services of their attorneys. The matter of the allowance of fees is one to be determined by contract. In the usual foreclosure proceeding the plaintiff has authority to foreclose the entire issue and he is entitled to be reimbursed for the reasonable value of the services rendered by his solicitor. Here, however, plaintiff did not have the right to represent all parties. Therefore, in effect, he was bringing a foreclosure complaint in behalf of himself alone, and the fees allowed should be commensurate with his interest. We are of the

opinion that the language of the trust deed is broad enough to cover a situation like the one before us, where the counterclaimants have vigorously and capably asserted their rights. Without such action on behalf of counterclaimants their rights would have been ignored, and under the language of the trust deed they should be allowed reasonable fees for the services of their attorneys. In entering the decree, however, the fees allowed as a whole should not exceed the fees that would ordinarily be allowed the plaintiff in foreclosing the entire issue.

Therefore, the decree is reversed and the cause remanded with directions to modify the decree so as to provide that the liens of counterclaimants as holders of notes 7-G and 8-H shall be on a parity with note 1-A; that notes 1-A, 7-G and 8-H shall be first and prior liens to the liens of the other noteholders; that the fees allowed to plaintiff for his solicitors be reconsidered, and that solicitors' fees be allowed to other parties, as they merit, not exceeding, however, one reasonable fee for all.

*Decree reversed and cause remanded with directions.*

FRIEND, P. J., and JOHN J. SULLIVAN, J., concur.