594

Noel State Bank, Trustee, Appellee, v. Blakely Real Estate Improvement Corporation et al., Defendants. Appeal of Scully Cuzzone et al., Appellants, v. Archie H. Cohen, Former Master in Chancery, Appellee, and Noel State Bank, Trustee, Appellee.

Gen. No. 42,181.

Heard in the first division of this court for the first district at the April term, 1942. Opinion filed February 28, 1944. Rehearing denied and supplemental opinion filed March 14, 1944.

GEORGE J. HADDAD and JOSEPH B. SANTUCCI, both of Chicago, for appellants.

WEISSENBACH, HARTMAN, CRAIG & OKIN, of Chicago, for Appellee Noel State Bank and *pro se*; HARRY OKIN, of Chicago, of counsel.

MAURICE L. DAVIS, of Chicago, for Appellee Archie H. Cohen.

MR. JUSTICE NIEMEYER delivered the opinion of the court.

On May 29, 1930 a foreclosure decree was entered finding $354,254.96 due the plaintiff Noel State Bank, trustee, for the use and benefit of the Noel Securities Corporation, the legal holder and owner of the bonds and interest coupons secured by the trust deed being foreclosed, and also finding a valid lien against the premises involved in favor of Dominic Cuzzone in the sum of $5,980, for labor and material for sewer work, but reserving the question of the priority of the Cuzzone lien as against the lien of the plaintiff for further hearing and until after the sale of the premises. The master filed his report of sale and distribution, reciting that on June 25, 1930 he sold the premises to the Noel Securities Corporation for the full amount under the decree and that out of the sum realized from the sale he had retained $5,980, "subject to the adjudication of the question of priority, if any, of the lien

claim herein of Dominic Cuzzone, which question was reserved for further hearing,'' and that he had disbursed and retained the expenses and fee of the sale and paid over the balance received to the solicitors for plaintiff. The report was approved by order entered July 11, 1930, in part, as follows: . . . and it further appearing to the Court and from the said Master's Report, that the Master has retained in his hands the sum of $5,980.00, subject to the adjudication of the question of priority, if any, of the lien claim of Dominic Cuzzone herein, as against the Complainant (plaintiff) herein, and as to the application to be made as between the said parties of the sum of $5,980.00 retained by said Master as aforesaid, and that the said Master hold the said sum subject to the further Order of this Court.'' A certificate of sale was issued to the purchaser; the master retired at the expiration of his term of office January 3, 1933; no redemption having been made, the successor to the master issued a deed in 1936; June 18, 1931 the plaintiff, Noel State Bank was closed by the State Auditor and a receiver appointed; Cuzzone died May 10, 1935.

Nothing was done in the cause until April 11, 1941 when, on notice to the master and the attorneys of record for the plaintiff and Cuzzone, petitioners, as the only heirs at law of Cuzzone and as assignees of the administrator of Cuzzone's estate of the lien claim involved, filed their petition seeking to be substituted as defendants in the place and stead of Cuzzone and praying that the master be ordered and directed to pay over to his successor or such officer as the court may designate, the sum of $5,980, to be held subject to the further order of the court, and that the question of priority of lien between petitioners and plaintiff be determined. Petitioners were substituted as defendants in the place of Cuzzone and upon hearing, after answer by the master and by the attorneys for plaintiff, who filed an answer as attorneys for the plaintiff

"until the appointment of the receiver," the petition was dismissed as to the master for want of equity, the court finding that the Cuzzone lien was wholly inferior to that of the plaintiff and that, contrary to the recitals of the master's report of sale and distribution, the master had not been paid and did not receive or retain the $5,980 in controversy.

Petitioners appeal, contending that the court erred in receiving evidence contradictory of the master's report and order of court approving the same, and in finding that the Cuzzone lien was inferior to that of plaintiff. Objection is also made to the participation of plaintiff's attorneys in the proceedings in their own behalf and also on behalf of plaintiff.

The master in his answer asserted that no part of the bid for the premises was ever paid, except $1,284.15 paid to him on account of fees, disbursements and commissions on the sale, totaling $3,284.15, leaving $2,000 thereof unpaid; that the attorneys for Cuzzone "knew at the time of the approval of the report of said sale, and knew at all times thereafter and during the lifetime of said Dominic Cuzzone, that nothing had been paid on account of the sum of $5,980, reported in the report herein of this respondent as having been retained by this respondent subject to the adjudication of the question of any priority arising under the mechanic's lien claim of said Dominic Cuzzone"; that he, the master, delivered to counsel for plaintiff (such counsel representing the buyer at the master's sale) a certificate of sale upon the understanding that same would be held and no disposition made thereof unless adequate provision were made for the payment of the fees, disbursements and commissions on sale of respondent, and for the payment of such sums as might be payable out of the proceeds of the sale to Cuzzone, the mechanic's lien claimant; that it may be the sale should be set aside, but if not, he, the master is ready and willing to make such payment

in respect to the sums as may be due petitioners as the court may direct. In this court the master takes the position that the trial court properly amended its record to speak the truth, contrary to the representations in his, the master's report, and that the Cuzzone lien, being inferior to plaintiff's lien, petitioners are not entitled to any relief.

The attorneys of record for the plantiff, Noel State Bank, upon whom notice of the filing of the petition had been served, answered stating that they represented the plaintiff until June 18, 1931, when the bank was closed and the receiver appointed; that no notice had been served upon the bank receiver or other parties in interest, and that by reason thereof they, the attorneys, were answering the petition. In their answer the attorneys asserted that no cash at all was paid to the master on account of the bid at the sale, and that no actual cash was involved in the sale, and "whatever reports were filed in the said proceeding were filed with full knowledge of all the parties and attorneys representing the same in the said proceedings." In this court the attorneys have presented a brief and argument for plaintiff and for themselves. In support of their right to represent plaintiff they assert that as attorneys for plaintiff at the time of the foreclosure decree they were obliged to render "such additional services as were necessary to complete the foreclosure proceedings, including attendance before the court upon the question concerning any priority of the lien claim in question."

From the testimony of the master, called by the court as a witness, and the testimony of one of the attorneys for the plaintiff, both of whom testified over objection of petitioners, it appears that no money was in fact paid to the master except the sum of $1,000 plus certain expenditures by and fees of the master, on the sale. The master also testified that prior to the filing of his report the attorney for Cuzzone knew that no

cash had been received, and that several days after the sale he, the master, had told Cuzzone's attorney that. the attorneys for the plaintiff had prospective purchasers for the property and that it was represented to the master that if a sale was made the Cuzzone claim would be taken care of in some manner, and that Cuzzone's attorney said he would go along. The attorney for Cuzzone was called by the court and testified over objection. This witness on examination by the court stated that he did not have any discussion with the master prior to the approval of the sale, and then, that he had no recollection of any discussion. On cross-examination of this witness by petitioners' counsel the court interposed an objection and refused to permit counsel to make an offer of proof, so that we do not know what counsel proposed to show. There is no attempt to show that the client, Cuzzone, was informed that the report did not speak the truth or that Cuzzone ever consented to or acquiesced in the misrepresentation as to the money received and retained by the master, and the vague and meaningless arrangement of being taken care of in some manner in the event the property was resold. Neither was any attempt made to show any authority of the attorney to acquiesce in such uncertain arrangements and thereby waive Cuzzone's right to have the premises sold for actual cash and his lien satisfied out of the proceeds. An attorney does not have implied authority to waive substantial rights of his client. 5 Am. Jur., Attorneys at Law, §§ 91, 92; *Rubel v. Title Guarantee & Trust Co.,* 199 Ill. 110; *Pomeroy v. Prescott,* 106 Me. 401, 407.

The effect of the decretal order appealed from is to vacate an order of equal solemnity entered more than 10 years before, and to make findings of fact directly contrary to those found in the prior order. This is not done upon any memorial or record of the court showing an accidental and excusable mistake, but upon

the oral testimony of an officer of the court who, by his testimony, convicts himself of having knowingly submitted a false report, and the testimony of the lawyer who was undoubtedly a moving agent in the misrepresentation and whose client was apparently the only beneficiary. It does not appear that the master, in making the report, was actuated by any motive of advantage to himself or injury to others. He did not benefit and could not expect to benefit, except by the good will of the attorneys and client accommodated and possible future references upon the recommendation of the attorneys. He falsely represented to the court that he had received and retained money which might ultimately be found due a third person, fully expecting that on demand the money would be forthcoming and no loss be sustained by anyone. However strongly we may feel that those who induced the misrepresentation and benefited by it should have paid the money into court rather than suffer the master to be placed in his present unenviable position, we recognize that sound public policy forbids that he should be permitted to escape the consequences of his act by repudiating and contradicting his official report. *City of Chicago v. Gage,* 95 Ill. 593, 628–631.

The term of court at which the report was approved had passed and the court was without power to impeach its record on the showing made. *People v. Lyle,* 329 Ill. 418, was a mandamus proceeding brought to compel a trial judge to sign a bill of exceptions presented on June 21, 1927; the court record showed the entry of an order on May 23 extending the time to file a bill of exceptions 30 days from that date; on August 25 the trial court entered an order correcting the order of May 23 so that the time to file the bill of exceptions was extended 30 days from May 20. In holding the later order invalid for want of power in the court to make the change, the Supreme Court said: "The action of the court can be shown only by the

record kept by the clerk. This record cannot be impeached by the clerk himself, by the recollection of the judge, or his want of recollection as alleged in this case, or by any other evidence. . . . after the term the power of amending is confined to clerical errors and matters of mere form, . . ." *Madison & Kedzie State Bank v. Cicero-Chicago Corrugating Co.*, 351 Ill. 180, is in point. Under a foreclosure decree entered July 3, 1928 a sale of the premises involved was had and on August 13, 1928 the master's report of sale and distribution approved and a deficiency entered in favor of plaintiff; no appeal was taken, and several months after the term had expired two junior claimants filed petitions charging, among other things, that the master had overpaid the plaintiff and seeking to have the deficiency decree vacated; in defense of the deficiency decree the plaintiff in its answer set up certain facts which it claimed showed an actual deficiency at the time of $908.81, the amount stated in the decree, one of the facts alleged being that the master sold the property for $42,000 and not for $44,500 as reported by him. The court said (190): "We have disregarded these statements, for the reason that under our holding both parties to this record . . . are bound by the record and cannot be heard to dispute the actual facts or showing that is made by the record of the decrees of July 3 and August 13 as it is presented to this court." After holding that the order approving the master's report of sale and distribution was a final and appealable order, the court said further (191, 192): "After the term expired the court was without power to change or modify the orders except as to matters of form or mere clerical errors or misprisions of the clerk, and the court was without power to set aside, vacate or annul the orders, as they were final and appealable orders. Relief against the decretal orders could only have been obtained by appeal or writ of error if the errors were

apparent on the face of the record, and if not, by bill of review or bill to impeach the decree for fraud or other sufficient cause. *Tosetti Brewing Co. v. Koehler,* 200 Ill. 369.'' The evidence offered for the purpose of impeaching the decretal order approving the report of sale and distribution should have been excluded. The master is conclusively held to have received and to be retaining the money which he represented to the court as having been received and retained.

On the question of priority of the Cuzzone lien, petitioners were obliged to show that the sewers installed had enhanced the value of the mortgaged property. In opposition to this claim the attorneys for the plaintiff offered two witnesses as experts who testified that, because of conditions existing when the work was done, the location of the property, etc., the sewers had not added to the value of the property. Petitioners objected to the testimony of these witnesses on the ground that the attorneys no longer represented the plaintiff and were not themselves parties in interest. This objection in so far as it related to the attorneys' right to appear for plaintiff, was properly overruled. The closing of the bank and the appointment of a receiver did not dissolve the bank or terminate the receivership. *Dillon v. Elmore,* 361 Ill. 356, 362-3-8; *People v. West Side Trust & Savings Bank,* 362 Ill. 607, 616; *Epstein v. Choldenko,* 272 Ill. App. 155, 159; *Erickson v. Country Club Bldg. Corp.,* 272 Ill. App. 341. The dissolution of a bank does not occur until its complete liquidation. 7 Am Jur., Banks, § 824. By section 11 of the general banking act (Ill. Rev. Stat. 1943, ch. 16½, par. 11 [Jones Ill. Stats. Ann. 10.11]), it became the duty of the receiver, as soon as could reasonably be done, to resign all trusteeships, but as shown by the cases cited, the bank remained as trustee until the receiver's resignation. In the present case the property involved was vacant and unproductive; the trust deed had been foreclosed, the property sold

and the period of redemption had almost expired; the only matter undisposed of was the determination of the question of priority between Cuzzone's lien and the plaintiff's lien; the record does not disclose whether the receiver had resigned or been called upon to resign, or whether the bank had been fully liquidated, and therefore dissolved. · It must be presumed that the bank is still in existence. No interested person is objecting to the failure of the receiver to resign or to the original attorneys of record continuing as attorneys for the plaintiff trustee. The question of priority should not be decided as an *ex parte* matter. The attorneys for plaintiff properly changed their position and continued to represent it. The objection to the attorneys appearing in their own behalf as appellees is sustained.

We are now brought to a consideration of the correctness of the finding that the Cuzzone lien was wholly inferior to that of plaintiff. Petitioners claim that this finding is contrary to the manifest weight of the evidence and due to the bias and prejudice of the trial court. The trial judge stated that he knew the master for a number of years and regarded him highly; that he felt the master had been ''roughly handled,'' taken advantage of; that someone should hold the master good if found in. default; that he, the judge, would begin by protecting his court, of which the master is a part; that the master ''is going to get everything I've got to protect him, and he will get it too''; and, ''so far as I am concerned it would be a very simple matter to find the master is not himself personally liable. I would like to warn you in advance of that because that is not only my disposition but I shall try diligently to do it, and I think that I shall be able to do so because I think we will all agree that the circumstances under which this was. done had to do with a situation which to say the least was unusual . . .'' Near the close of the hearing, after stating

that he was put on notice that the parties intended to appeal and that they should be encouraged to do so if not satisfied with the court's disposition of the case, he said: "However, I am very anxious that the reviewing court should have as much before it as I have before me, and while I cannot see they have all the information I have, because some of it came to me in informal discussions outside—in my chambers and outside of open court . . . ." This unfortunate attitude of the trial court precluded a fair and impartial hearing of the matters in issue and disqualified him as a trial judge. This was particularly true in respect to the question of fact as to whether the sewer installed had enhanced the value of the property, a fact which, if found against petitioners, would completely absolve the master from responsibility in the present proceeding. Therefore we cannot give to the finding as to that fact the weight due to the finding of a trial judge when the witnesses testify in open court, as here, but are forced to examine and pass upon the evidence *de novo,* as evidence presented upon written depositions and without the benefit of the judgment of the trial court.

Two witnesses testified for petitioners. One was a valuation engineer and real estate appraiser in Chicago for 21 years, except for 2 years in New York City. The other had been in the real estate business about 30 years, particularly in the development of acreage in Cook county, and had installed about $20,000,000 worth of sewers in property in which he was interested. These witnesses testified that the sewers enhanced the value of the property, at least to the extent of the reasonable contract price in excess of $8,000. This testimony was opposed by that of the two witnesses called by the plaintiff. These men were local men, with less experience. They testified that the sewers added nothing to the value of the property. The premises involved are located at Sherwin avenue

and Clark street, Rogers Park, Chicago, with frontage on both streets. With present day sanitary regulations and the requirement of permits from the City for all improvements, it is almost a matter of common knowledge that installation of sewers is an essential part of the development or improvement of any property within the city limits. As one witness testified, a truck garden is about the only use to which the property could be put without sewers. We find that the sewer work installed enhanced the value of the property to the extent of the contract price in excess of $8,000 and that the mechanic's lien for $5,980 in favor of Cuzzone is superior and prior to that of plaintiff.

The order appealed from is reversed and the cause remanded with directions that a decree be entered directing the master to pay into court the sum of $5,980, finding and establishing the Cuzzone lien as superior and prior to that of plaintiff, and directing the payment of the $5,980 to petitioners in full satisfaction of the lien.

*Reversed and remanded with directions.*

MATCHETT, J., concurs.

O'CONNOR, P. J., dissenting in part: I agree with the conclusion reached in the foregoing opinion, namely, that the property was enhanced in value $5,980 by the work Mr. Cuzzone did in installing water mains, etc., in the property. But I am unable to agree that the master in chancery should be held liable for this sum or for any other sum.

I think it is necessary to state a few facts which appear of record. The trust deed which was given to secure the payment of $280,000, evidenced by 56 bonds of $5,000 each, was made June 16, 1926 by the Blakely Real Estate Improvement Corporation conveying the property to the Noel State Bank, as trustee. The bonds became due June 16, 1929, and bore interest at 6½ per cent, payable semiannually. June 17, 1926, the

day after the trust deed was executed, the mortgagor, the Blakely Real Estate Improvement Corporation, conveyed the property to the Noel State Bank, as trustee under a trust agreement known as Trust No. 161. The bill of foreclosure was filed June 29, 1929, and the decree of foreclosure entered May 29, 1930, in which it is found that the Noel Securities Corporation, an affiliate of the bank, is the legal holder and owner of all of the 56 bonds. That there is due and owing to the complainant, Noel State Bank, as trustee named in the trust deed "for the use and benefit of the legal holder and owner of the bonds" $354,254.96. The decree also finds four other mortgages on the property whose lien is subordinate to the lien of the bonds. The amounts so found are: $7,905.09, $4,014.93, $41,927.61 and $6,928.12. The decree also finds that there is due to the lien claimant, Mr. Cuzzone, $5,980, and further, that April 4, 1928, the Blakely Real Estate Company was dissolved by a decree of the superior court of Cook county; that March 22, 1929, the Blakely Company entered into a contract with Mr. Cuzzone to install sewers and water mains in the property in question; that Cuzzone began work and filed his claim for mechanic's lien in the circuit court of Cook county and that no part of it had been paid; that while Blakely Company had been dissolved, as above stated, before the making of the contract with Mr. Cuzzone, notice that the improvements were being made would be implied and it was decreed that Mr. Cuzzone was entitled to a lien for $5,980 and that the question of the priority of the lien as against the mortgage, which was being foreclosed, was reserved for further consideration. It was decreed that unless the indebtedness, as found due under the mortgage, including the master's fees, was not paid within three days, the property to be sold for *cash* at public auction to the highest and best bidder after the master had advertised according to law, etc.

Following this, July 11, 1930, after notice to the parties, the master's report of sale and distribution was filed and approved and the question of priority between the mortgage indebtedness and Mr. Cuzzone's claim was to be rereferred to a master. The master's report of sale recites that he sold the property to the highest and best bidder for *cash* on June 25, 1930, to the Noel Securities Corporation for its bid of $358,865.58, which was the highest and best bid. The master's report then continues and recites that he received the amount and itemized how he distributed the money. That he paid the complainant, the Securities Co. the amount found due by the decree including $25,000 solicitor's fees, the $2,500 trustee's fees and that the master retained his fees and court costs aggregating $3,001.20. The master then continues and recites that he retained the $5,980, the amount found to be due Mr. Cuzzone, the priority of which was later to be determined. And further that there was no deficiency due complainant.

The master attached vouchers to his report which were signed by himself which recite that he had retained the $5,980. There is also a voucher attached wherein the solicitors for complainant acknowledged receipt of $30,699.30, costs due complainant including the solicitor's and master's fees.

As stated, this decree approving the master's report of sale and distribution was entered July 11, 1930. Nothing further appears until nearly 11 years thereafter when on April 11, 1941, attorneys representing the heirs of Mr. Cuzzone, who died May 10, 1935, but who were not the attorneys who represented him in the foreclosure suit, filed their petition in which they set up the probating of their father's estate in the probate court of Cook county; that the father died intestate leaving no debts; that an inventory was filed in which the following item appeared: "Judgment entered in the Circuit court of Cook county in favor of

Dominic Cuzzone and against the Blakely Real Estate Improvement Corporation in the sum of $5,980.''

The master's term had expired and his successor appointed and the prayer of the petition was that the master be required to turn over the $5,980 to his successor. The master in his answer, among other things, set up the sale by him of the property and that no part of the bid was ever paid with the following exception, $1,284.15 on account of the master's fees; leaving a balance due and unpaid. And further averred that Cuzzone was represented by a firm of attorneys in the foreclosure suit and that they were told, and knew before the master's report of sale and distribution was approved, and at all times thereafter during Mr. Cuzzone's lifetime, that nothing had been paid to the master when he sold the property except as above stated. That some time after the sale the master delivered to counsel for complainant a certificate issued by him upon the understanding that no disposition would be made of it unless adequate provision was made for the payment of fees, disbursements, commissions and Mr. Cuzzone's claim. That after the master's term had expired a master's deed was issued January 3, 1933, by the master's successor upon surrender to him of the master's certificate; that in a case brought in the circuit court of Cook county entitled *Faerstein v. Noel State Bank,* a receiver was appointed ''of the subject matter of said collateral trust indenture,'' and that on August 28, 1936, an order was entered in that suit that a lien be impressed upon the subject matter of the trust estate in favor of the master for $2,000, the amount remaining unpaid to him for his fees in the foreclosure suit, and that no transfer of title to the real estate or the master's certificate of sale had yet been made because no money had been received when the property was struck off by the master.

On the hearing of the petition involved in the instant case, the master testified to the averments in his answer that no money had been paid to him when he

sold the property and that a few days thereafter and before the report of sale and distribution was approved, the then attorney for the claimant was apprised of this fact and that he made no objection to it at any time. That at the same time the matter was explained also to the attorney for the complainant in the foreclosure suit and it was agreeable to all three parties. The attorney who had represented Mr. Cuzzone in the foreclosure suit was called and testified but his testimony is somewhat evasive, although I think it clearly appears from his testimony that the matter was explained to him, and to which he agreed; that he never did anything in the matter at any time for a period of probably 10 years, and the first action was taken by other counsel who are retained by the heirs of Mr. Cuzzone.

Of course everyone knows that where the mortgagee at a foreclosure, buys the property he gives in payment the bonds or other evidence of indebtedness which is being foreclosed. In such case the cash is never paid, only sufficient to take care of some costs, etc. This is the universal practice and has been to my knowledge for more than 40 years. And this too, although the decree of foreclosure orders the master to sell the property for *cash* and he reports that he did sell it for cash and attaches receipts from the mortgagee—the purchaser—that the mortgagee had received cash. It would be absurd to say that where a master sells property at foreclosure to the mortgagee —which happens in almost every case—that the mortgagee be required to pay cash to the master and the next day for the master to turn the money back to the mortgagee. This is never done although the master reports that that is what was done. In the instant matter the realities of the situation rather than technicalities are to be considered.

From the record it is clear that Mr. Cuzzone and his attorney each knew of the fact that no money had been paid and this is shown not only by the testimony but

by the actions of the attorney and his client. And that they acquiesced in what was done as the best way to handle the matter so that the property might be put on the market and he might thereby get his money. Mr. Cuzzone lived for more than five years after the report of sale and distribution was approved. Neither he nor his counsel made any complaint that they were not getting their money and it is not until 11 years after the decree and the report of the master's sale and distribution that any complaint is made. There is no justice in this claim so far as the master is concerned. He acted honorably in every way and there is no contention to the contrary by anyone.

The record discloses that the property is still held by the successor of the purchaser at the foreclosure sale. No third party's interests are involved; the bank (by a suit brought by the Auditor of Public Accounts), and its affiliate, the Securities Company, have long since gone out of business. In these circumstances I think the Cuzzone claim should attach as a lien to the property.

SUPPLEMENTAL OPINION ON PETITION FOR REHEARING.

In its petition for rehearing the plaintiff trustee for the first time suggests that there is no basis in the record for determining the value of the property before and after the improvements for which the mechanic's lien was allowed, and therefore no basis for determining the amount of the priority of the mechanic's lien, citing *Alexander Lumber Co. v. Kellerman*, 271 Ill. App. 571.

The evidence shows and we found that the sewer work enhanced the value of the property to the extent of the contract price, which was in excess of $8,000; at the foreclosure sale the premises, with improvements, sold for approximately $359,000. This is pre-

sumed to be the fair cash value. *Ogle v. Koerner,* 140 Ill. 170; *People v. Anderson,* 380 Ill. 158; *Chicago Title & Trust Co. v. City of Chicago,* 321 Ill. App. 271.

As to the enhanced value of at least $8,000, without · reference to the cost of the material and labor actually furnished, the mechanic's lien had priority. *Croskey v. Northwestern Mfg. Co.,* 48 Ill. 481, 483. Under authority of the *Alexander Lumber Co.* case, cited by plaintiff, and the *Croskey* case, the mechanic's lien claimants were entitled to 8/359 of the foreclosure sale price, and the mortgage lien claimants to the remainder. As to their respective proportions, each lien claimant had priority. Hence, the mechanic's lien claimants were entitled to the $5,980 allowed them, notwithstanding plaintiff's mortgage was not paid in full.

The petitions for rehearing are denied.

*Rehearings denied.* ·

O'CONNOR, P. J., and MATCHETT, J., concur.