James J. Elward, Plaintiff-Appellant, v. Peabody Coal Company, an Illinois Corporation, Defendant-Appellee.

Gen. No. 53,960.

First District, First Division.

March 9, 1970.

Rehearing denied April 6, 1970.

Edward and Macie, of Chicago (Edward S. Macie, of counsel), for appellant.

Kirkland, Ellis, Hodson, Chaffetz & Masters, of Chicago (Thomas M. Thomas and Owen M. Johnson, Jr., of counsel), for appellee.

MR. JUSTICE ADESKO delivered the opinion of the court.

This action was initiated by a complaint in chancery by James J. Elward, who was the owner of 800 shares of preferred stock of the defendant, Peabody Coal Company. Plaintiff brought suit in his representative capacity for all other preferred shareholders who were the owners of 188,071 preferred shares of the defendant corporation. Plaintiff sought to have a plan of liquidation, which had been adopted by the stockholders, declared null and void, and also sought an order directing the corporation to pay an additional $1 redemption premium to each of the preferred shareholders upon the surrender of their stock certificates, as required by the company's liquidation procedure.

The trial court dismissed plaintiff's complaint for want of equity following a motion for summary judgment. The cause was submitted upon the pleadings, documents produced through discovery procedures, an agreed statement of facts and arguments of counsel.

In 1966 the defendant corporation entered into negotiations for its sale to the Kennecott Copper Company.

In the latter part of 1967, the negotiations had reached a point where a consummated transaction seemed likely. On October 14, 1967, the shareholders of Peabody were notified of a special meeting of shareholders to be held on November 7, 1967, for the purpose of considering a number of resolutions, among which were the approval of the sale to Kennecott and the adoption of a plan of complete liquidation. The proxy statement that accompanied the notice of the meeting contained pertinent information for the proposed meeting. Exhibit C of the statement was entitled "Plan of Complete Liquidation of Peabody Coal Company" which recited an adopted resolution of the board of directors that was to be submitted for shareholder approval of the sale of Peabody to Kennecott and a plan of voluntary dissolution of the corporation.

The dissolution plan provided that upon approval of two-thirds of the shareholders, the distribution of its assets in cancellation of all its shares would entitle the preferred shareholders a preferential liquidating dividend of $25 par value per share plus any unpaid cumulative dividends accrued, and the payment of the remainder of the assets on a pro rata basis to the holders of the common stock of Peabody.

The meeting scheduled for November 7, 1967, was continued several times and finally held on January 26, 1968. On this latter date, both the common and preferred shares voted as a single class with the result that 9,135,242 shares were voted for adopting the resolution, while 136,876 shares voted against the proposal. The resolution, as adopted, read as follows:

"RESOLVED that the shareholders of the Company (a) have considered the advisability of voluntarily dissolving the corporation and do hereby approve and adopt a Plan of Complete Liquidation of the Company (the 'Plan') providing for the complete and voluntary liquidation and dissolution of

301

the Company and the sale of its business assets, said Plan to be in the form, or substantially in the form, of the Plan of Complete Liquidation of the Company appended as Exhibit C to the Proxy Statement of the Company. . . ."

On March 29, 1968, the sale to Kennecott was consummated. On that same day, defendant corporation filed with the Secretary of State, a statement of intent to voluntarily dissolve the corporation, pursuant to sections 76 and 77 of the Illinois Business Corporation Act (Ill Rev Stats 1967, c 32, §§ 157.76–157.77). This statement recited the exact words of the resolution as set out above and also an explanation of the voting which approved the resolution. The voting was broken down into the number of shares of each class voting for and against the resolution.

In early February of 1968, the plaintiff had complained to Peabody about the propriety of the liquidation procedure which had been adopted. Plaintiff then filed his complaint on February 15, 1968, which was subsequently amended and supplemented. Plaintiff's allegations challenged the procedure used in adopting the resolution in question, claiming that the proposal was so incomplete as to render it null and void and that the corporation and its directors had breached their fiduciary duties with regard to the preferred shareholders. The same allegations are urged before us on this appeal. Plaintiff further argues that the trial court erred in granting the defendant's motion for judgment on the pleadings. More specifically, plaintiff contends that the defendant did not sustain his burden of proof with regard to an alleged affirmative defense and that the trial judge used extrajudicial knowledge to incorrectly influence his decision on what plaintiff characterizes as the "controlling issue" in this case.

Defendant meets these contentions by asserting no impropriety arose from the judge's decision in this mat-

ter. As to the allegations regarding the impropriety of the plan of liquidation, defendant maintains that the preferred stockholders were given their contractual rights, pursuant to the corporate charter. The contractual rights of the corporate stockholders, as written in the Restated Articles of Incorporation of Peabody and also printed on the back of the preferred stock certificate of the plaintiff provide as follows:

"R–V 2. (A) (ii) Redemption Premium. The amount per share which the holders shall be entitled to receive as a premium in the event of redemption shall, in the case of the 5% Prior Preferred Shares, be one dollar.

. . . . . .

"R–V 2. (C) Preferences on Liquidation. In the event of any liquidation, dissolution or winding up of the Company (whether voluntary or involuntary), the holders of the 5% Prior Preferred Shares then outstanding shall, to the extent of the full par value of their shares and unpaid cumulative dividends accrued thereon be entitled to priority of payment out of the Company's assets over the holders of the Common Shares then outstanding. After such payment to the holders of the 5% Prior Preferred Shares, the remaining assets shall be distributed pro rata to the holders of the Common Shares then outstanding.

"R–V 2. (D) Redemption. The Company, upon the sole authority of its Board of Directors, may at any time redeem and retire all or any part of the 5% Prior Preferred Shares at any time outstanding by paying or setting aside for payment for each share so called for redemption the sum of $26.00 plus a sum equal to the amount of all dividends accrued or in arrears thereon at the redemption date."

303

The plaintiff's theory in bringing this action, which he maintains on appeal, is that the corporation should have redeemed the preferred stock and then liquidated the corporation. By adopting the redemption procedure each preferred share would have received a $26 redemption payment along with accrued dividends. Plaintiff contends that because some of the directors owned common stock in Peabody, that the liquidation procedure diverted the $188,071 which would have been paid for the redemption of the preferred for payment to the common stockholders. The proxy statement had disclosed that certain members of the Kelce family, who were officers and/or directors of the corporation, owned in the aggregate some 12% of the common stock.

Plaintiff further maintains that the voting for the proposed plan of liquidation should have been separate for the two classes of shareholders. The plaintiff has relied on section 54 of the Business Corporation Act (Ill Rev Stats 1967, c 32, § 157.54), which calls for voting by classes when certain amendments to the articles of incorporation are contemplated. It appears from the case of Bowman v. Armour & Co., 17 Ill2d 43, 160 NE 2d 753 (1959), that where the relative rights of the stockholders of a particular class are affected by amendment to the articles of incorporation, this section is applicable. However, this is not the issue in this appeal. The controlling section for the voting rights in a voluntary dissolution are stated in section 76 of the Business Corporation Act:

> "(c) At such meeting a vote of shareholders entitled to vote thereat shall be taken on a resolution to dissolve voluntarily the corporation, which shall require for its adoption the affirmative vote of the holders of at least two-thirds of the outstanding shares entitled to vote at such meeting, unless any class of shares is entitled to vote as a class in respect

304

thereof, in which event the resolution shall require for its adoption the affirmative vote of the holders of at least two-thirds of the outstanding shares of each class of shares entitled to vote as a class in respect thereof, and of the total outstanding shares entitled to vote at such meeting." Ill Rev Stats, c 32, § 157.76(c) (1967).

■ We agree with defendant's contention that in light of the above statutory provision, voting for voluntary liquidation was properly held as a single class of common and preferred shares. In the absence of any statement to the contrary from the corporation's charter, there was no requirement of voting by separate classes. No such provision is found in Peabody's articles of incorporation.

■ Plaintiff also contends that the resolution was defective because of the wording which stated that "said Plan to be in the form, or substantially in the form of" the proposed plan as contained in the proxy statement. Specifically, plaintiff argues that the resolution refers to another writing which was not attached to the resolution and whose provisions were not disclosed in the minutes of the meeting. The contention is that because of the resolution's incompleteness it is uncertain and indefinite as to have no legal effect since it lacked the "exact contents" of the plan as proposed in the proxy statement. Furthermore, plaintiff alleges this same defect rendered the statement of intent to dissolve null and void. Defendant argues that this very technical argument is without merit when considered with the rights in liquidation as contained in the articles of incorporation. We agree with the defendant. The plan of liquidation contained all the rights which were guaranteed to the preferred shareholders in the corporation's articles of incorporation. Although the language of the resolution lacks definiteness, the fact remains that the pre-

ferred stockholders were accorded all of their rights upon voluntary dissolution of the defendant corporation.

■ The complaint also alleged that the directors breached their fiduciary relationship for several reasons. First, plaintiff argues that where the directors have a choice of two procedures, either the redemption or the liquidation plan, they had a duty to explain more completely the meaning of each plan to the shareholders. Plaintiff premises this argument upon the fact that the Kelce family had a conflict of interest due to its combined holding of over 12% of the common stock of Peabody. We think the answer lies in the fact that according to the articles of incorporation, the board of directors were given the right to choose redemption while a stockholder vote was necessary to adopt a liquidation plan. Furthermore, the answer to this contention was admitted by plaintiff when he stated in his brief that, "There was a lengthy Proxy Statement of 68 printed pages from which the Preferred shareholders might have learned this. . . ." From our examination of the record, we find that plaintiff was adequately informed of the particulars of his rights including the disclosure of the stockholdings of the Kelce family. We do not believe that plaintiff and the other preferred shareholders can complain that they were not adequately apprised of their rights in this proposed plan of liquidation.

Secondly, plaintiff complains that the directors violated their fiduciary duty owed to the stockholders and the corporation. Plaintiff states the rule that where there are two alternative procedures to adopt for a corporate transaction and where the first procedure will not result in any financial benefit to the directors and the second will, then the directors should adopt the first procedure, unless it affirmatively proves that the first procedure will cause some substantial disadvantage to the corporation. His argument is that the directors could

have redeemed the preferred stock by paying the prescribed $1 redemption premium and then have proposed voluntary liquidation. Plaintiff asserts this was not done because the common stock held by the Kelce interests would receive a portion of the $188,071 which would have been paid to the preferred shareholders if the redemption procedure were adopted. Thus, plaintiff contends that some 12% of that amount was now available to the Kelce common stock interests by adopting the liquidation procedure.

█ In support of this contention, plaintiff has cited the following cases which we find inapplicable. In the case of Shlensky v. South Parkway Bldg. Corp., 19 Ill 2d 268, 166 NE2d 793 (1960), a stockholder derivative suit questioned transactions between two corporations which had interlocking corporate directorates. The instant case is a representative action which has not challenged the dealings of defendant with Kennecott and has not alleged that any of the directors of Peabody are also members of the Kennecott directorship. In Paulman v. Kritzer, 74 Ill App2d 284, 219 NE2d 541 (1966), another derivative suit challenged a director's personal gain from an activity which should have been offered to the corporation, in violation of the corporate opportunity doctrine. Plaintiff has not alleged facts in violation of this principle. The case of Johnson v. Central Life Ins. Co., 102 Ill App2d 15, 243 NE2d 376 (1968), involved similar principles as found in Paulman, supra.

█ █ In conjunction with this alleged breach of fiduciary duty, the plaintiff argues that the directors have the burden of proof that there was no breach of fiduciary duty. Plaintiff has relied upon Johnson, supra, which was a derivative action which challenged a breach of the corporate opportunity doctrine. The Johnson decision relied upon the case of Winger v. Chicago City Bank & Trust Co., 394 Ill 94, 67 NE2d 265 (1946), where

the rule was stated that where a fiduciary has acquired property of the corporation, in violation of the shareholder's trust, such dealing will be presumed to be fraudulent and the burden of proving his good faith rests upon the fiduciary. However, the facts of this case do not involve the corporate opportunity doctrine. Further, the nature of this action was a representative suit rather than a stockholder's derivative action for the benefit of the corporation. Thus, we are of the opinion that the burden of proof for the plaintiff's allegations was to be sustained by the plaintiff. In Central Standard Life Ins. Co. v. Davis, 10 Ill2d 566, 141 NE2d 45 (1957), a class action was brought to dissolve a corporation. The court stated that the plaintiff had not sustained his proof to warrant recovery, stating at page 576 the rule which is applicable to this action:

> "A stockholder who brings a class action on behalf of himself and others must show that he is himself entitled to relief. Babcock v. Farwell, 245 Ill 14."

 As stated above, defendant has maintained that the preferred stockholders cannot complain of these transactions due to the fact that they were afforded all of their preferential rights. The rule has been stated that the rights of preferred stockholders are a matter of contract fixed by the articles of incorporation and the stock certificates. Tennant v. Epstein, 356 Ill 26, 189 NE 864 (1934); Opelka v. Quincy Memorial Bridge Co., 335 Ill App 402, 82 NE2d 184 (1948). Furthermore, we agree with the rule cited by defendant that one who purchases and subscribes to stock of a corporation impliedly agrees to be bound by the acts approved by a majority of the stockholders, or by the corporate agents duly chosen by the majority, if accomplished within the scope of the powers conferred by the charter. Wheeler v. Pullman Iron & Steel Co.,

143 Ill 197, 32 NE 420 (1892). As stated in Fletcher's Cyclopedia on Corporations, Vol 16A, § 8022 (1962):

> "The general rule is that where a statute confers power on a majority, or a certain percent, of the stockholders to dissolve, the right is absolute, so far as the motives of the majority are concerned, in the absence of actual fraud, and not subject to judicial review on behalf of minority stockholders."

■ Finally, we come to plaintiff's contention of the alleged error of the trial court in dismissing the complaint for want of equity. The issues involved center upon the qualification of the plan of liquidation under the Internal Revenue Code, section 337, dealing with the nonrecognition of capital gains upon liquidation of a corporation. By virtue of plaintiff's pretrial discovery it was revealed that this tax section was considered by the Peabody directors in its proposed sale to Kennecott. The issue was interjected by plaintiff's amended and supplemental complaint, in which plaintiff alleged that there was no showing by the defendant that in order to qualify the liquidation plan under IRC 337 that the liquidation procedure had to be adopted instead of the redemption procedure followed by liquidation as contended by plaintiff. Plaintiff argues on appeal that defendant had the burden of proof to negate this allegation which plaintiff has characterized as an "affirmative defense" and the "controlling issue" in this action. We do not agree. The party that raised this issue was the plaintiff. Defendant categorically denied said allegations and on appeal asserts that the relevance of IRC 337 was only that it dictated the steps necessary to bring about a tax saving when the shareholders considered the proposed liquidation. This section has no effect upon the preferential rights of the preferred shareholders in the absence of any proof submitted by the plaintiff. As we noted in the Davis case, supra, the bur-

den of proof is upon the representative stockholder in such an action.

■ Concomitant with this issue regarding IRC 337, plaintiff argues that the trial judge used extrajudicial knowledge in ruling upon that question and was thereby prejudiced in his decision. The record reveals that the judge stated that he relied upon his previous experience in interpreting that section and that he characterized plaintiff's proposed redemption-liquidation procedure as a sham transaction under IRC 337. Appellant has cited a number of cases which deal with the prejudicial bias of a judge who has extrajudicial information concerning the factual matters, ranging from cases of administrative review to decisions involving a judge's personal interest. Smith v. Department of Registration and Education, 412 Ill 332, 106 NE2d 722 (1952); People v. Cooper, 398 Ill 468, 75 NE2d 885 (1947); Noel State Bank v. Blakely Real Estate Improvement Corp., 321 Ill App 594, 53 NE2d 621 (1944). We find these cases and the others cited inapplicable. The trial judge was merely using his experience in interpreting a matter of law. This was the trial judge's duty when ruling upon the motion for judgment on the pleadings. Plaintiff has not alleged any personal bias nor does the record substantiate any finding which would require a reversal of this ruling.

Therefore, the judgment of the Circuit Court of Cook County is affirmed.

Judgment affirmed.

BURMAN, P. J. and MURPHY, J., concur.