# Southern Illinois Contracting Company et al., Appellees, v. William P. Launtz, Appellant.

MECHANIC'S LIENS—*when decree against fee erroneous.* A decree against the fee of a lot cannot be rendered where the structure erected was pursuant to a leasehold interest which has expired and where under such leasehold interest the structure erected was to be temporary, was to be removed, added no value to the real estate and was in fact a detriment thereto.

Bill in chancery. Appeal from the Circuit Court of St. Clair county; the HON. GEORGE A. CROW, Judge, presiding. Heard in this court at the October term, 1911. Reversed and remanded with directions. Opinion filed March 21, 1912.

JAMES M. DILL, for appellant.

M. D. BAKER, D. J. SULLIVAN and WHITNEL, BROWNING & GILLESPIE, for appellees.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

Appellees filed their bill in chancery in the circuit court of St. Clair county, to enforce a mechanics' lien for labor and material, against two lots located in East St. Louis, one of which was owned by appellant. The cause was referred to the master in chancery and the evidence taken before him developed the following facts concerning which there was no dispute:

Appellant, William P. Launtz, owns what is known as the Metropolitan building, fronting on Missouri avenue in East St. Louis and also a lot 25 feet wide and 100 feet long fronting on the same street west of and adjoining the Metropolitan building. West of and adjoining appellant's 25 foot lot was another lot of the same size, owned by Mrs. Ida M. Chivers of Los Angeles, California. The surface of these two lots was about ten feet lower than the street and sidewalk in

front of them and the space under the sidewalk was
not filled in.  These lots were vacant, when in the
early part of June, 1909, three men, Patton, Deerner
and Roegner, came to appellant to rent his lot to be
used in connection with the Chivers lot, for the erec-
tion of a structure called an airdome, for the purpose
of giving open air summer entertainments. Appellant,
the only witness, who testified as to the terms of the
lease, swore that he leased them 18 feet of his lot, re-
taining the seven feet next to the Metropolitan build-
ing so that it would not affect the light of that building,
for the months of July, August and September for $60
or $65 a month; that the renters were, at their own ex-
pense, to construct their airdome and, at their own ex-
pense, to remove it at the end of the season, unless
there should be some later agreement about the mat-
ter; that he had no interest whatever in the airdome;
that the lease was a verbal one and the rent money
named was to be paid for the ground rent.  The les-
sees, after the renting, proceeded to erect the airdome
on the two lots.  It consisted of a platform about 37
feet wide and 90 feet long level with the sidewalk and
was supported on wooden posts, resting on stone foot-
ings some eight feet apart.  There was a stage at the
back end of the platform for giving exhibitions and
dressing rooms connected therewith.  In front was a
building of corrugated iron of sufficient dimensions for
ticket office, entrance and mechanics' room, which rose
some 14 feet above the sidewalk.  The remainder of the
platform was open, being protected from view on ap-
pellant's side by the Metropolitan building and on the
opposite side by a board fence.  When the airdome
was nearly completed but before any rent or bills for
labor or material had been paid, the lessees used it
to give some seven performances and then decamped.
They never reappeared in East St. Louis but were
made parties to this suit and service was had upon

them by publication. The building was permitted to stand until the front wall blew part way over and people complained of it as being a dangerous nuisance when appellant hired a man to tear the structure down and pile it under the sidewalk where it remained unclaimed at the time of the suit.

It was shown by some ten witnesses that the construction of the airdome was not an improvement to appellant's lot but on the contrary a detriment thereto.

The court below entered a decree dismissing the bill as to Mrs. Chivers, who had also been made a defendant, on the ground that the proof failed to establish the fact she had knowingly permitted the erection of the structure on her premises; but decreed that unless appellant Launtz should within thirty days pay the sum of $586.35, which was one half of the total amount of the claims for materials, labor, etc., furnished by complainants and the costs of the suit, that such amount should become a lien on his lot and the same should be sold by the master in chancery.

Appellant's position is that it was error in the court to decree a lien against his fee in the lot because under the agreement the structure was to be temporary and to be removed at the end of the three months' lease and that therefore the same was no improvement to the freehold; that the law is, that unless the structure becomes a part of the real estate no mechanics' lien can be enforced and that it must not only become a part of but must add value to the real estate.

In 20 Am. & Eng. Ency. of Law, (2nd Ed.) 304, it is said: "It is usually considered essential to the existence of a mechanics' lien that the improvement on account of which it is claimed must appertain to and have become a part of real estate" also, "The mechanics' lien is given upon the principle that the work or labor or materials have been a benefit to the realty or have enhanced its value."

It does not necessarily follow that structures placed by one person on the land of another, become a part of the real estate, as a house erected by one upon the land of another, under an agreement it shall belong to the builder, is personal property. C. & A. R. R. Co. v. Goodwin, 111 Ill. 273.

This question has recently been carefully considered and the authorities reviewed in the case of Darlington Lumber Co. v. Burton, 156 Ill. App. 82. In that case a tract of land was leased for five years for an amusement park with the agreement that the buildings or fixtures they should erect thereon might be removed at the end of the lease. After the buildings were erected and a dam put in to form a lake, the lessee defaulted in the payment of rent and thereafter a bill was filed by certain parties who had furnished material for the structures, seeking to enforce a mechanics' lien against the fee in the premises, on account of the permanency of the improvement. After reviewing a number of cases upon the subject, the court in its opinion by Mr. Justice Puterbaugh says: "The theory upon which the mechanics' lien laws are based is that the owner of the fee is benefited by buildings and improvements erected on the premises, they becoming a part of the realty, and that he in right and justice should pay for this accruing benefit when it was induced or encouraged by his acts. It is founded upon the equitable doctrine that as the land is enhanced in value the owner of the fee should pay for the improvements when he encouraged them. Where however the lease provides that any buildings and improvements that are erected on the demised premises by the lessee may be removed by him at the expiration of the term, such buildings and improvements as are temporary in character and capable of being removed do not become part of the realty, but remain personal property. The fee is in no way enhanced in value and the owner can derive no benefit

therefrom. In such case there can be no sound equitable basis for requiring the owner to pay for the same and the lien of the material men, if any exists, extends only to the leasehold estate.''

In the present case it was shown by the proofs that appellant had no interest whatever in the building; that it was temporary in character and was to be removed at the end of the lease unless some further arrangement, looking to the retention of the building, was entered into between the lessor and the lessees, which was not done; also that the structure instead of being a benefit to the premises and enhancing their value was, as a matter of fact, a detriment. Applying the doctrine of the above case, with which we agree, appellees are not entitled to any lien upon appellant's fee and as the leasehold interest has expired, they have no claim which can be enforced against the premises.

It is insisted however by appellees that as appellant knowingly permitted his lessees to place the structure upon the premises, he thereby subjected the fee to liens for labor and material furnished in connection therewith. The law on this subject as laid down in Haas Elec. Mfg. Co. v. Springfield, 236 Ill. 452, is, that where the owner of the fee consents that the lessee shall make improvements, which shall remain upon the property for the benefit of the lessor at the expiration of the lease, his interest shall be subject to the lien. But where, as in this case, the structures erected by the lessee are to be removed at the expiration of the lease and no permanent benefit accrues to the premises, then only the leasehold estate and not the fee is liable to the lien.

Appellees assigned as a cross error that the court erred in admitting evidence of the terms of the contract between appellant and its lessee. In our view of the law as above expressed, the rights of the parties depended to a large extent upon the terms of the con-

tract between appellant and his lessees and therefore it was both proper and necessary that the terms of that contract should be disclosed to the court.

For the reasons above given, the decree of the circuit court will be reversed and the cause remanded with directions to the court below to dismiss the bill for want of equity.

*Reversed and remanded with directions.*