Moulding-Brownell Corporation v. E. C. Delfosse Construction Company et al.
National Fraternal Society of the Deaf, Appellee, v. Grace Sherwood Trumbull et al., John A. Scribbins, Appellant.

Gen. No. 40,952.

492

Heard in the third division of this court for the first district at the October term, 1939. Opinion filed April 10, 1940.

H. C. RUMERY and EDWIN W. BURCH, both of Chicago, for appellant.

JOSEPH S. GRANT, of Chicago, for appellee; HENRY W. KENOE, of Chicago, of counsel.

MR. JUSTICE BURKE delivered the opinion of the court.

During the early part of 1933 Charles W. Trumbull and Grace Sherwood Trumbull, husband and wife, were the owners of certain real estate located at 2257 Silverton drive. This property was situated just west of the Illinois Central tracks at the 23rd street entrance of A Century of Progress. The property was subject to a first mortgage, held by the National Fra-

ternal Society of the Deaf, a corporation. The owners entered into an agreement with the Fridstein Engineering Company for the construction of a restaurant building. After the completion of the building, the property was operated at a loss. In August, 1933, a bill to foreclose certain mechanics' liens upon the real estate and improvements was filed. In October, 1933, a separate bill to foreclose the first mortgage was filed. The cases were consolidated. A decree was entered. On appeal, in the case of *Moulding-Brownell Corp. v. E. C. Delfosse Const. Co.*, 291 Ill. App. 343, this court decided that all the lien claimants had agreed to waive their liens, except John A. Scribbins, surviving partner of Graves & Scribbins, who contracted for and provided the architectural work on the property. The opinion pointed out that the right to a lien by Scribbins was not contested, and the court affirmed that part of the decree which found that he was entitled to a lien for $5,200, together with interest at the rate of 5 per cent per annum from August 29, 1933, for the work which he had done. Accordingly, the decree was affirmed as to the foreclosure of the mortgage and as to the lien of Scribbins, and reversed as to the other lien claimants. When the case was redocketed in the circuit court a new decree was entered, which disallowed all of the lien claims except that of Scribbins; found that he had a mechanic's lien for $5,200, and that the plaintiff, mortgagee, had a lien for its mortgage indebtedness of approximately $36,000 and interest. A sale was directed, which resulted in a bid of $40,000. The proceeds of the sale, after deductions for master's fees and other costs in excess of $3,000, being insufficient to satisfy both liens, the cause was rereferred to a master for the purpose of determining the priorities of the parties in the proceeds of the sale and the proper distribution to be made. Defendant offered testimony before the master to establish the relative value of the land and of the improvements, and to

determine the enhancement in value of the property caused by his services. The master determined that three-quarters of the proceeds of the sale was realized from the property as it was before the improvement, and that one-quarter was realized from the enhanced value of the property contributed by the improvement. Defendant testified that his lien was based upon a claim for architectural services, and that his fee was 6 per cent of the construction cost. Accordingly, the master determined that 6 per cent of the enhancement in value of the property was contributed by the serv- ices of the defendant, and the remaining 94 per cent was contributed by the other lien claimants. The mas- ter also determined that the other lien claimants were paid in the manner they contracted for payment, and that ''therefore, payment in such manner has the same effect for the purposes of the pending question as if payment in cash had been made by the equity owner; namely, to enhance the security of the mortgagee.'' The master found that as to the enhancement in value traceable to the material and services of other claim- ants, plaintiff, as mortgagee, was entitled to be subro- gated, and that the defendant could establish priority only in that portion of the total enhancement in value contributed by his services alone, of 6 per cent of the entire enhancement, which is $600. Defendant Scrib- bins filed objections to the master's report. He did not object to the finding of the master that ''the other lien claimants were paid in the manner they contracted for payment, therefore, payment in such manner has the same effect as if payment in cash had been made by the equity owner, namely, to enhance the security of the mortgagee.'' An order was entered by the chan cellor that the objections stand as exceptions. The court overruled the exceptions, and on June 15, 1939, entered a supplemental decree. Clauses 4 and 5 read:

''That all of the other lien claimants comprising ap- proximately ninety-four per cent (94%) of the lienable

services rendered and materials furnished have been paid in accordance with their contract with Charles W. Trumbull and Grace Sherwood Trumbull, owners of the said real estate; that the claim for lien of John A. Scribbins constitutes 6 per cent (6%) of the total improvements and that his service has therefore enhanced the value of the said property in the sum of Six Hundred ($600.00) Dollars; that as to the enhancement of value in the said premises caused by the services rendered and materials furnished of all other contractors and sub-contractors whose claims are, by this decree, found to have been paid in accordance with their contract, the plaintiff, National Fraternal Society of the Deaf, is entitled to be subrogated; and such increase in the value of the property has been caused by the said enhancement caused by the services and materials furnished by all the other contractors and sub-contractors, should be held to enhance the security of the National Fraternal Society of the Deaf, a corporation, plaintiff herein, as mortgagee;

"That since the total enhancement of the value of the said property is in the sum of Ten Thousand ($10,000.00) Dollars, Ninety-four Hundred ($9,400.00) Dollars of the said enhancement became additional security for the payment of the mortgage held by the plaintiff, National Fraternal Society of the Deaf, a corporation; that the balance of Six Hundred ($600.00) Dollars constitutes the only fund and portion of the proceeds of the foreclosure sale upon which the lien of the said John H. Scribbins, defendant and intervening petitioner, is entitled to priority." The supplemental decree directed the distribution of the fund. The defendant Scribbins prosecutes this appeal from the supplemental decree.

The first criticism leveled at the supplemental decree is that the rights of the mortgagee and the lien claimant Scribbins, were fixed by the original decree, which was affirmed as to them, and that the chancellor

had no right, as to them, to do more than re-enter the decree with all the provisions as to their respective rights unchanged. Plaintiff agrees that when a decree is affirmed, it should be followed by the trial court. It, however, insists that the chancellor did follow the decree and that the proceedings had were in accordance with the recognized procedure in such cases. The original decree found that the architect had a lien for $5,200, and interest. It is manifest, however, that neither the original decree nor the second decree could assure him that he would receive the amount found due him. How much he would ultimately receive, would depend on how much was realized on the sale, and a subsequent determination of the relative priorities between the mortgagee and the architect. It is obvious that this was the purpose of both decrees, as the court expressly reserved jurisdiction to ascertain and determine the respective values of the land and the improvements, for the purpose of directing proper distribution of the proceeds of the sale. We do not understand that defendant contends the original decree gave him a prior lien for the full amount of his claim without regard to a determination of the question of the enhancement of the property. We have carefully read the briefs and the opinion in the previous case, and are convinced that such opinion did not undertake to determine the priorities as between the architect and the mortgagee.

The next point, and the one on which defendant places chief reliance, is that the law gives a mechanic a lien for the amount due him and not for the value of labor or materials furnished, and that such lien is on all the premises. Under that point he declares that the liens of mechanics are prior liens on so much of the sale price of the premises as is attributable to the enhancement of the value of the premises, due to the improvement toward which they furnished materials.

Accordingly, the architect argues that he should be preferred to the value of the improvements erected on the premises and not limited to the proportionate share his lien bears to the entire value of the premises. Plaintiff, on the other hand, insists that a lien claimant is entitled to a priority over a mortgagee only to the extent that his labor or services enhanced the value of the property. He insists that when the owner of prop- erty has paid for the cost of an improvement, a mort- gagee is entitled to be subrogated to the enhancement in value of the property traceable to that portion of the improvement for which the owner has paid, as against a lien claimant who has not been paid. In reply to the latter statement defendant challenges the assertion that the owner of the property paid for a portion of the improvement. The statement is taken from the finding of the master. There was no excep- tion to such finding. Because he did not except before the chancellor, the architect cannot now voice an ob- jection to the finding as to payment of part of the im- provement by the owner. (*Jewell v. Rock River Paper Co.,* 101 Ill. 57, 68; *Marble v. Thomas,* 178 Ill. 540; *Dreger v. Boyer,* 297 Ill. App. 581.)

Both parties emphasize the provisions of section 16 of the Mechanics' Lien Act (sec. 16, ch. 82, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 74.16]) which reads ·

"No incumbrance upon land, created before or after the making of the contract under the provisions of this act, shall operate upon the building erected, or mate- rials furnished until a lien in favor of the persons hav- ing done work or furnished material shall have been satisfied, and upon questions arising between incum- brancers and lien creditors, all previous incumbrances shall be preferred to the extent of the value of the land at the time of making of the contract, and the lien cred- itor shall be preferred to the value of the improve- ments erected on said premises, and the court shall as-

certain by jury or otherwise, as the case may require, what proportion of the proceeds of any sale shall be paid to the several parties in interest. All incumbrances, whether by mortgage, judgment or otherwise, charged and shown to be fraudulent, in respect to creditors, may be set aside by the court, and the premises freed and discharged from such fraudulent incumbrance." As between the parties to the contract, the contract price establishes the value of the improvements. As against the mortgagee and all other third persons, the reasonable value of the improvements must be proven to establish the enhancement. While the lien attaches as of the date of the contract, the priorities as between the lienors and the mortgagee are determined under the provisions of section 16. When the proceeds of the sale are substituted for the land and building, both the mortgagee and the lien claimants are entitled to the same proportionate interest in the proceeds that they had in the property before it was sold. Enhancement is the increase in market value of the property by reason of the improvement covered by the claim for lien at the time of the making of the improvement, and is not affected by the cost of labor or material, the original amount of the claim, or the balance due thereupon. Usually, in a decree the chancellor divides the proceeds of the sale of property into two funds, over one of which the mortgagees have priority, and over one of which the lienors have priority. These two funds bear the same ratio to each other as do the value of the land and whatever was on it immediately prior to the installation of the improvement and the value of the enhancement created by the improvement under the contract.

Defendant places emphasis on the opinion in *Mitchell v. Robinovitz*, 272 Ill. App. 414. Plaintiff relies on *Clark v. Moore*, 64 Ill. 273; *Croskey v. Northwestern Mfg. Co.*, 48 Ill. 481; and *Southern Illinois Con-*

*tracting Co. v. Launtz,* 169 Ill. App. 87.) The *Clark* case involved a situation somewhat analogous to the case at bar. The court said, p. 282:

"In the case of *North Presbyterian Church of Chicago v. Jevne,* 32 Ill. 214, it was held that a prior mortgagee had the first lien on the land as it was unimproved, and the mechanic or material-man had a first lien on the building, and that each should be satisfied out of the fund upon which he had the prior lien; that if either fund was more than sufficient to satisfy the prior lien thereon, and the other was insufficient to pay the prior lien on it, then the latter should be satisfied from the surplus remaining of the other fund. The same rule was adhered to in the cases of *Croskey v. Northwestern Man. Co.,* 48 Ill. 481, and *Howett v. Selby,* 54 Ill. 151; but where, as in this case, there is a large proportion of the enhanced value of the property produced by the owner paying for labor and material furnished by others than the parties to the suit, the question arises whether the mechanics and material-men shall have it appropriated to the payment of their liens, or shall it be applied to the prior incumbrances, or shall it be treated as a fund in which both may participate *pro rata.* In such a case, the enhanced value produced by the payment of money by the owner, whilst the work was progressing, should be applied to the satisfaction of the mortgages on the property; and if any portion of the fund thus created shall remain, to be applied to the satisfaction of the liens for labor and materials. It has always been recognized the true rule to hold all improvements placed by the mortgagor on the premises as being embraced in and subject to the mortgage. We can not suppose that they were intended, when made, to be for the benefit of other lien holders. They have their lien on the enhanced value they have given to the property, but have advanced neither money nor materials for which the owner has

paid; and the subsequent mortgages may have been given to secure the very money paid by the owner for the labor and materials.'' We have carefully considered the arguments of the parties and the cases that have been cited, and are convinced that the purpose of section 16 is to protect the lien claimant to the extent of the increased value of the premises by reason of his improvements. It would be inequitable to allow recovery out of part of the property not benefited by the improvement. In the instant case, had the other contractors not been paid and had the liens in their favor been allowed, the lien of the architect would have been limited in priority to 6 per cent of the total enhancement. The fact that the other contractors have been paid neither aids nor injures him. The priority of his lien must be bottomed on its own strength as a contributor to the enhanced value of the property. The evidence shows that the total enhancement by defendant's services contributed 6 per cent.

Finally, the architect urges that the court should have found that the enhanced value by virtue of the services and material of the lien claimants, was from $15,000 to $19,300, instead of $10,000, which he did find. After an examination of the testimony of the experts, we are of the opinion that the court was right in deciding that three-quarters of the sale price, or $30,000, represented that portion of the proceeds realized from the original value of the property, and that one-quarter, or $10,000, represented that portion of the proceeds realized from the enhancement of the value of the property, resulting from the improvement.

We are of the opinion that the formula adopted by the chancellor for the apportionment of the fund between the mortgagee and the architect was in accordance with the law. Therefore, the decree of the circuit court of Cook county is affirmed.

*Decree affirmed.*

DENIS E. SULLIVAN, P. J., and HEBEL, J., concur.