LYONS SAVINGS, n/k/a Superior Bank, FSB, Plaintiffs, v. GASH ASSOCIATES *et al.*, Defendants (Paint Works, Inc., *et al.*, Counterplaintiffs-Appellants; La Salle National Bank, as Trustee, *et al.*, Counterdefendants-Appellees).

First District (1st Division)   No. 1—94—1886

Opinion filed March 29, 1996.—Rehearing denied May 24, 1996.

Emalfarb, Swan & Bain, of Highland Park (Peter G. Swan, of counsel), for appellants.

Rock, Fusco, Reynolds & Garvey, Ltd., of Chicago (James M. Crowley, of counsel), for appellees.

JUSTICE BUCKLEY delivered the opinion of the court:

Appellants, Paint Works, Inc. (Paint Works), Pro-Tech, Inc. (Pro-Tech), Tri-State Carpeting & Decorating, Inc. (Tri-State), and Leo Hein Construction, Inc. (Leo Hein), brought mechanics' lien claims asserting that they have priority over certain funds set aside from the sale of property foreclosed upon by mortgagees. The trial court ruled that (1) appellants failed to prove that they enhanced the value of the property, (2) some of appellants' improvements were nonlienable, and (3) Leo Hein had failed to perfect its lien for a portion of its work. Appellants contend that all of these holdings are in error.

In 1985, appellants provided services, labor, and material for a building in Rosemont, Illinois, managed by Diversified Holding Corp. (DHC) for a total cost of $100,908.44. They subsequently recorded

mechanics' liens totaling $78,411.55. At the time this work was done, the building was previously incumbered by four properly recorded mortgages, one of which was held by appellee Lyons Savings & Loan Association (Lyons). In 1987, the mortgagees foreclosed on the property and forced a foreclosure sale which took place on November 3, 1988. At the time the property was sold, the mortgages totaled more than $11 million. The property was sold for $4,005,000, and the order of foreclosure provided that $150,000 would be retained from the proceeds of the sale for distribution to valid lienholders. Only the first two mortgages were fully satisfied at the sale; Lyons held the third mortgage, which was not fully satisfied. Appellants claim that their work enhanced the value of the property by an amount equal to the contract price and that, under the Mechanics Lien Act (770 ILCS 60/0.01 et seq. (West 1994)), they have priority over the amount of their liens from the funds set aside. Lyons claims that it has priority over the entire amount set aside because it holds a prior and properly recorded mortgage and appellants have failed to prove enhancement.

After a trial in the chancery division of the circuit court of Cook County, the trial court found that appellants had failed to present any evidence that they enhanced the value of the property, and, therefore, the Mechanics Lien Act does not entitle them to any part of the funds set aside from the foreclosure sale. The trial court also found that Pro-Tech's cleaning services were nonlienable, and that Paint Works' and Tri-State's labor in removing and replacing mini-blinds and moving furniture was nonlienable. Finally, the trial court found that Leo Hein had failed to perfect its lien for the first phase of its work.

■ Section 16 of the Mechanics Lien Act provides in relevant part that "upon questions arising between incumbrancers and lien creditors, all previous incumbrances shall be preferred to the extent of the value of the land at the time of making of the contract, and the lien creditor shall be preferred to the value of the improvements erected." 770 ILCS 60/16 (West 1994). Therefore, in order to have priority over a mortgagee, mechanics' lien claimants whose contracts with the owner are made after the mortgage is recorded must prove that they have enhanced the value of the property. If they fail to prove this, then the mortgage will have complete priority over the liens. *Commercial Mortgage & Finance Co. v. Woodstock Construction Co.*, 51 Ill. App. 2d 61, 65, 200 N.E.2d 923, 925 (1964). Appellants claim the trial court erred in finding that they failed to prove "the value of the improvements erected." 770 ILCS 60/16 (West 1994).

■ Relying on *Moulding-Brownell Corp. v. Delfosse Construction Co.*, 304 Ill. App. 491, 26 N.E.2d 709 (1940), the trial court found that

the lien claimants must prove the value of their enhancements by applying the market value theory. Generally, under the market value theory, the value of the enhancements equals the market value of the property after the improvements are made minus the value of the property before the improvements are made. *Moulding-Brownell,* 304 Ill. App. at 498, 26 N.E.2d at 712.

In *Moulding-Brownell,* the property at issue was previously incumbered by a mortgage when the owners contracted with the lien claimants to build a restaurant. The mortgagee and the lien claimants later foreclosed on the property and forced a liquidation sale. The sale did not raise sufficient money to satisfy both the mortgagee and the lien claimant, and both parties claimed priority. *Moulding-Brownell,* 304 Ill. App. at 493-94, 26 N.E.2d at 710. The court interpreted section 16 (which has not been amended since its adoption in 1903) to provide that mechanics' lien claimants must prove enhancement under the market value theory. *Moulding-Brownell,* 304 Ill. App. at 498, 26 N.E.2d at 712. The court explained that an "[e]nhancement is the increase in market value of the property by reason of the improvement \*\*\* and is not affected by the cost of labor or material, the original amount of the claim, or the balance due thereupon." *Moulding-Brownell,* 304 Ill. App. at 498, 26 N.E.2d at 712.

In this case, the lien claimants did not attempt to prove enhancement under the market value theory at trial. Therefore, the trial court found that they had failed to prove enhancement and that the incumbrancer had priority over the funds in dispute. On appeal, the lien claimants argue that it would have been impossible for them to apply the market value theory because the improvements they made were so minor, given the value of the property. We agree.

The record shows that appellants' total contract price was $100,908.44. Their lien claims total $78,411.55. Theodore Kowalski, appellants' expert witness, testified that since this was a multimillion dollar property, and the improvements were so relatively meager, the market value theory would have been impossible to apply accurately. He testified that the degree of variance that can generally be accepted with regard to market value is 10%. Since 10% of the value of the property far exceeds the lien claims, the market value approach is inappropriate for determining the value of these improvements.

Other appellate court decisions have held that the contract price is the appropriate measure of the lien claimants' improvements. *Noel State Bank v. Blakely Real Estate Improvement Corp.,* 321 Ill. App. 594, 53 N.E.2d 621 (1944); *AA Erickson Brothers, Inc. v. Jenkins,* 41

Ill. App. 2d 180, 190 N.E.2d 383 (1963). In *Noel*, the court weighed priorities between a prior incumbrancer and a mechanics' lien claimant, who had provided labor and materials for minor sewer work to an existing structure. The contract price was $8,000, and the lien was for $5,980. Subsequent to these improvements, the incumbrancer foreclosed on the property, and a sale of the property failed to raise enough money to satisfy both the incumbrance and the lien. After the sale, $5,980 was set aside until a determination could be made as to priority between the lienor and the incumbrancer. *Noel*, 321 Ill. App. at 596, 53 N.E.2d at 622.

The court found that "it is almost a matter of common knowledge" that sewers enhance the value of property. *Noel*, 321 Ill. App. at 605, 53 N.E.2d at 626. The court held that the value of the enhancement was the amount of the contract price, and, therefore, the mechanics' lien of $5,980 had priority over the prior incumbrance. *Noel*, 321 Ill. App. at 605, 53 N.E.2d at 626.

*Erickson* also involved relatively minor improvements to an existing building. In that case, the plaintiff provided labor and materials to repair and restore some of the building's brick work. The court found that since the contract price for the work was $1,050, the value of the enhancement was $1,050. *Erickson*, 41 Ill. App. 2d at 189, 190 N.E.2d at 387.

We find that *Noel* and *Erickson* control the determination of priorities in this case, because *Moulding* is significantly factually distinct. *Noel* and *Erickson* involved minor improvements to existing structures. The contract prices of the improvements were far less than 10% of the values of the buildings. Since the margin of error in utilizing the market value approach is 10%, and thus exceeds the cost of the improvements, the market value approach would have been inappropriate. In *Moulding-Brownell*, on the other hand, the improvement was the construction of a restaurant on otherwise empty property, thus adding substantially more than 10% to the market value of the premises. In such a situation, the market value theory is an accurate approach for determining the value of the enhancement.

In this case, the total contract cost of the improvements was $100,908.44, and the lien claims total $78,411.55. The foreclosure sale raised $4,005,000. Even assuming that the foreclosure sale price was equal to the fair market value of the property, the cost of the improvements was approximately 2.5% of the value of the property. Clearly, with a 10% margin of error, the market value approach is useless.

■ We find that where the market value approach is inappropri-

ate, the lien claimant must establish the contract price as an accurate measure of the value of the enhancements by showing that the improvements aided the property in achieving its highest and best use. This requires the lien claimants to prove the following elements: (1) the work in question was properly authorized by the owner of the property; (2) the contract price was reasonable for the work done; (3) the lien claimants complied with the terms of the contract; and (4) the work constitutes a valuable and permanent improvement to the property. See *Erickson*, 41 Ill. App. 2d at 189, 190 N.E.2d at 387.

The record in this case demonstrates that all four of these elements exist in this case. First, Robert Miller, an official of DHC, testified that he authorized the work done by each lien claimant. Second, Mr. Kowalski and Mr. Miller both testified that all the contract prices were reasonable, a contention which Lyons does not dispute. Third, Mr. Miller and representatives from each of the lien claimants testified that they performed according to their agreement. Finally, all the testimony was consistent that the work was done professionally and that the improvements are valuable and permanent. Therefore, the improvements aided the property in achieving its highest and best use, and the contract prices are accurate measures of the value of the enhancements. Since appellants' liens are based on their contract prices, they have priority over Lyons for the funds set aside from the foreclosure sale.

Appellants also contend that the trial court erred in finding that some of the work done by Pro-Tech, Paint Works, and Tri-State was nonlienable.

■ With respect to Pro-Tech, the trial court found that work done to clean stairways, clean washroom grout, and seal washroom walls was nonlienable. While mere maintenance of property is nonlienable (*Watson v. Watson*, 218 Ill. App. 3d 397, 400, 578 N.E.2d 275, 278 (1991)), cleaning the mess of demolition and construction is lienable. *Cleveland Wrecking Co. v. Central National Bank*, 216 Ill. App. 3d 279, 287, 576 N.E.2d 1055, 1061-62 (1991). Michael Owens, a 50% partner and owner of Pro-Tech, testified that the work done by Pro-Tech was mainly "remedial cleaning" of grease, oil and debris left behind by the other lien claimants. Cleaning the mess of renovation is part of the improvement, and, therefore, it is lienable work. *Cleveland Wrecking*, 216 Ill. App. 3d at 287, 576 N.E.2d at 1061-62. However, Pro-Tech's invoice shows that $540 was charged for "18 washrooms; scrubbed tile & grout on walls and floor ceramic tile and sealed." Since there is no evidence in the record that this work was necessitated by the other lien claimants, it was nonlienable mainte-

nance. *Watson*, 218 Ill. App. 3d at 400, 578 N.E.2d at 278. Therefore, appellants' priority is reduced by $540.

■ Paint Works painted and repaired walls, and Tri-State removed and replaced carpeting and padding. In addition, they both removed old miniblinds and installed new ones, and they both needed to move furniture to do their work. The trial court held that the removal and replacement of miniblinds and the moving of furniture is nonlienable. However, the Mechanics Lien Act provides that labor and services in "building, altering, repairing, or ornamenting" property is lienable. 770 ILCS 60/1 (West 1994). Painting and wall covering, as well as removing and installing carpeting, is clearly lienable work. *Henry DeCicco & Co. v. Drucker*, 101 Ill. App. 2d 340, 347, 243 N.E.2d 456, 460 (1968). We find that moving furniture to allow access was a necessary part of the wall and floor work, and, therefore, it was lienable. Furthermore, removing old blinds and installing new ones constitutes "altering" or "ornamenting" property, which is also lienable. Therefore, all the work performed by Paint Works and Tri-State was lienable.

■ Finally, appellants claim that the trial court erred in finding that Leo Hein failed to perfect the lien for the first part of its work. Section 7 of the Mechanics Lien Act provides that in order to perfect a lien as against another creditor or incumbrancer, the lien claimant must file an action to enforce the lien or record the lien claim with the county recorder within four months of the completion of the work. 770 ILCS 60/7 (West 1994). Leo Hein provided demolition and construction services in two phases. Phase I was completed in May 1985, and phase II was completed in September 1985. Leo Hein recorded its lien claim in October 1985, within four months of the completion of phase II, but not within four months of the completion of phase I. Each phase resulted from separate proposals and was designated a separate job number. Therefore, we find that phase I and phase II were separate jobs. Since Leo Hein completed the first job five months before recording its lien claim, the lien for phase I work was not perfected. Leo Hein's invoices show that the lien asserted for its first job was $865, and, therefore, appellants' priority is reduced by $865 for Leo Hein's failure to perfect the lien on its first job.

For the foregoing reasons, we find that the lien claimants have proven their improvements enhanced the value of the property by the contract price of their work, and, therefore, their valid liens are entitled to priority over the prior incumbrances. We further find that all the work was lienable, except the cleaning and sealing Pro-Tech did in the washrooms for $540, and that Leo Hein failed to perfect its

lien for $865 for its first job. Therefore, appellants have priority over $77,006.55 of the funds set aside from the foreclosure sale.

Affirmed in part; reversed in part.

WOLFSON and BRADEN, JJ., concur.