FIRST DIVISION

No. 1-07-2369


INTER-RAIL SYSTEMS, INC.,          ) Appeal from the
a Missouri Corporation,            ) Circuit Court of
                                   ) Cook County.
     Plaintiff and Counter-        )
     defendant-Appellant,          )
                                   )
          v.                       )
                                   )
RAVI CORPORATION, VISHNU GOR,      ) No. O6 CH 08600
L.C. MERTZ, NATIONAL WASTE         )
SERVICES, INC., CAPITAL            )
ACQUISITIONS AND DEVELOPMENT,      )
INC., MARQUETTE NATIONAL BANK,     ) Honorable
RPM RECYCLING, UNKNOWN OWNERS      ) Clifford L. Meacham and
and NONRECORD CLAIMANTS,           ) Robert J. Quinn,
                                   ) Judges Presiding.
     Defendants and Counter-       )
     plaintiffs-Appellees.         )

     JUSTICE HALL delivered the opinion of the court:

     The plaintiff, Inter-Rail Systems, Inc., filed a multicount

complaint against the defendants, Ravi Corporation, Vishnu Gor,

L.C. Mertz, National Waste Services, Inc., Capital Acquisitions

and Development, Inc., Marquette National Bank, RPM Recycling,

unknown owners and nonrecord claimants (collectively the

defendants).  Counts I and IV sought foreclosure of mechanic's

liens filed against two properties owned by the defendants.  The

remaining counts alleged causes of action for breach of contract

and quantum meruit.  The circuit court granted the defendants'

motion for partial summary judgment as to counts I and IV of the

complaint and found that there was no just reason to delay

No. 1-07-2369

enforcement or appeal of its order.

The plaintiff appeals. The sole issue on appeal is whether the defendants were entitled to partial summary judgment because the removal and disposal of waste pursuant to a United States Environmental Agency order is not a lienable activity under the Mechanics Lien Act (770 ILCS 60/1 et seq. (West 2004)) (the Act). The pertinent facts are taken from the pleadings, exhibits, depositions and affidavits contained in the record on appeal.

In July 2005, responding to a request from the City of Chicago department of the environment, the United States Environmental Emergency Response Branch (the EPA) inspected a parking lot located at 6147 West 65th Street in Bedford Park, Illinois. In the parking lot were 14 semi-trailers filled with drums and totes containing unknown chemicals; some of the containers were leaking. The substances appeared to be perfume agents used in the manufacture of industrial cleaners.

The EPA also inspected a warehouse at 6158 West 65th Street, across the street from the parking lot. The inspection of the warehouse revealed over 500 55-gallon drums and a number of totes throughout the building. Many of the drums were in poor condition. There was material present on the outside of the drums; some were leaking their contents onto the floor. Many of the drums had labels indicating they contained acids, caustics

2

and oxidizers. There were numerous pallets stacked with bags of raw materials, including sodium hydroxide; many of the bags were ripped open, releasing their contents. The totes reportedly contained waste water from previous operations at the site.

In August 2005, the EPA met with a representative of defendant Ravi Corporation at the warehouse. There was a slight haze in the warehouse most likely due to fumes from the acid reacting with rain water. The acid was leaking from a nitric acid tank; a strong acid odor was noted in the vicinity of the tank.

According to the complaint, in August 2005, the defendants contracted with the plaintiff for the removal and disposal of the drums from both the parking lot and the warehouse (hereinafter referred to collectively as "the site"). In the meantime, the defendants and the EPA entered into a consent decree requiring the defendants to clean up the site by testing and removing the trailers, drums and totes. The cleanup also required scraping, sweeping, decontaminating or removing any areas of the trailers or on the site where spills occurred in order to remove the contamination. The plaintiff's work was completed on December 1, 2005. When the defendants failed to pay the balance due on the contract, the plaintiff recorded mechanic's liens against the site and filed the instant complaint.

3

No. 1-07-2369

In their motion for partial summary judgment, the defendants maintained that, contrary to the plaintiff's claim that it performed cleanup, removal and transport of hazardous waste from the site, the plaintiff was contracted only to remove certain drums containing various substances. The defendants further maintained that the plaintiff did not perform any work which resulted in any improvements to the site. Therefore, the plaintiff did not meet the requirements for a lien claim under the Act. In support of their motion, the defendants relied on the affidavits of defendant Vishu Gor, president of defendant Ravi Corp., and Thomas Powell, a former employee of the plaintiff.

Mr. Gor averred that the plaintiff was hired to remove certain drums containing various materials from the sites. The materials were all contained in drums prior to the arrival of the plaintiff on the site. Neither the plaintiff nor its personnel was engaged to perform any cleaning or decontamination services on the site. In his affidavit, Mr. Powell averred that he was the plaintiff's primary on-site employee for the project with the defendants. The plaintiff's work on the site consisted of testing, removal and transport of drums containing various materials. At no time did the plaintiff perform or provide any cleanup or decontamination of any spills, leaks or other

4

No. 1-07-2369

contamination on the site.

The defendants' motion was also supported by an April 16, 2006, EPA pollution report that described the plaintiff's activities on the site as follows:

"Beginning in September 2005, the LC Mertz/Gor Drum contractor began staging and inventorying drums and containers located in both the warehouse and in trailers in the parking area. Trailers in the parking area were moved to the warehouse loading dock and the contents of the trailers were off loaded and staged in the warehouse."

After describing the number of containers found in the warehouse and the number moved from the trailers to the warehouse, the report continued as follows:

"All drums, containers, and tanks were given an identification number, sampled and hazard characterized (haz-cat). *** Representative samples of the identified waste streams were sent to a laboratory for analysis. Materials were grouped into their respective waste streams for disposal.

All other RCRA empty drums, totes and jugs were cut/crushed.

In addition, the floor drainage pit was pumped and rinsed, several tanks on-site were emptied and rinsed.

5

No. 1-07-2369

Contents of the floor pit and tanks were characterized and appropriately disposed of offsite. The floor and machinery were cleaned. The contractor demobed from the site on December 15, 2005."

In its response to the motion for partial summary judgment, the plaintiff maintained that the removal of the hazardous and toxic waste from the site constituted an improvement to the property under the Act. The plaintiff cited the findings of the EPA that conditions on the site posed a threat to public health and welfare and that the removal order was necessary to protect the public. The plaintiff maintained that the defendants admitted that cleanup of toxic and hazardous waste was lienable under the Act, and therefore, their motion for partial summary judgment should be denied.

In support of its response, the plaintiff relied on Mr. Gor's deposition testimony in which he acknowledged the hazard the drums posed to the environment. The plaintiff also cited Mr. Powell's deposition testimony in which he described the protective clothing he wore while moving the drums in order to avoid coming into contact with or breathing in any of the substances.

As to the work performed, the plaintiff relied on Mr. Powell's description of the activities undertaken by the

6

plaintiff's personnel at the site. The plaintiff's personnel had to break through a floor to access some of the drums. They drained tanks and the pipes along the walls. They did not wash the tanks but did wipe down the equipment and the tanks afterwards. They tested the floor pits and then drained them. The drums that were leaking in the trailers were scraped and burned out. For the substances that leaked from the drums in the warehouse, dry oil was put around the drum and then disposed of in another drum.

Finally, the plaintiff relied on the deposition testimony of Robert Janota, the plaintiff's president. According to Mr. Janota, in addition to the removal, transport and disposal of the waste-containing drums, the plaintiff's personnel placed the leaking drums in "'overpacked" drums, pumped out the floor pits and disposed of their unidentified contents, repackaged smaller containers, and removed some of the piping when the pipes were emptied.

In its reply to the plaintiff's response, the defendants maintained that deposition testimony of Mr. Janota and Mr. Powell confirmed that no lienable decontamination service was provided by the plaintiff. In addition, the defendants contended that the plaintiff was unable to delineate between any potentially lienable work and the nonlienable work. Finally, the defendants

pointed to the plaintiff's acknowledgment that the cleanup, consisting of the sweeping and rinsing of the floors, took place at only one part of the site.

At the hearing on the motion for partial summary judgment, the parties agreed that a significant amount of the materials removed from the site was hazardous. The circuit court then stated as follows:

"Your real problem here, from my perspective, is apportionment. *** There's not, in my judgment, there is no real significant possibility of your being able to apportion that which is lienable from that which is nonlienable, and I concede that for the purposes of this argument that some of the efforts your client took are lienable. *** [b]ut at the same time, there's no question that a lot of it is nonlienable, unless you can apportion the whole lien is going to fail. So I am going to grant the motion with respect to those two counts.

If you can come in here within 30 days and establish some basis to apportion, feel free to do that."

The circuit court confirmed that it did not believe that the disposal of sealed drums constituted lienable work.

The plaintiff chose not to replead counts I and IV. On August 22, 2007, the court dismissed counts I and IV with

prejudice and found no just reason to delay enforcement or appeal of its order.  This appeal followed.

ANALYSIS

The plaintiff contends that the circuit court's grant of partial summary judgment to the defendants was erroneous because the removal and disposal of hazardous and toxic waste from the site constituted an improvement to the property under the Act, and therefore, such work was lienable.  The defendants respond that the plaintiff's removal of sealed drums, many of which contained no hazardous substances, and the incidental sweeping and rinsing were not lienable.  The defendants further maintain that, even if some of the plaintiff's work was lienable, the plaintiff's failure to delineate between the lienable work and the nonlienable work defeated the entire lien.

I.  Standard of Review

We review an order granting a motion for summary judgment under the de novo standard of review.  Luise, Inc. v. Village of Skokie, 335 Ill. App. 3d 672, 678, 781 N.E.2d 353 (2002). "Summary judgment is proper if, and only if, the pleadings, depositions, admissions, affidavits and other relevant matters on file show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Prowell v. Loretto Hospital, 339 Ill. App. 3d 817, 822, 791

N.E.2d 1261 (2003). In determining whether a genuine issue of material fact exists, the pleadings, admissions and affidavits are construed strictly against the movant and liberally in favor of the nonmovant. Prowell, 339 Ill. App. 3d at 822. "A triable issue precluding summary judgment exists where the material facts are disputed or reasonable persons might draw different conclusions from undisputed facts." Prowell, 339 Ill. App. 3d at 822.

## II. Discussion

"The purpose of the Mechanics Lien Act [citation] is 'to require a person with an interest in real property to pay for improvements or benefits which have been induced or encouraged by his or her own conduct.'" Stafford-Smith, Inc. v. Intercontinental River East, LLC, 378 Ill. App. 3d 236, 240, 881 N.E.2d 534 (2007), quoting Leveyfilm, Inc. v. Cosmopolitan Bank & Trust, 274 Ill. App. 3d 348, 352, 653 N.E.2d 875 (1995). Mechanic's liens were not recognized at common law or in equity but were created by statute. Tefco Construction Co., Inc. v. Continental Community Bank & Trust Co., 357 Ill. App. 3d 714, 718, 829 N.E.2d 860 (2005). "While the Act should be construed liberally as a remedial one, being in derogation of the common law, it is strictly construed with reference to the requirements upon which the right to a lien depends." Tefco Construction Co.,

No. 1-07-2369

Inc., 357 Ill. App. 3d at 719.  Mechanic's liens "should not be extended to cases not provided for by the language of the [A]ct even though they may fall within its reason."  Robinette v. Servite Fathers, 49 Ill. App. 3d 585, 587, 364 N.E.2d 679 (1977).

In order to assert a lien under the Act, a party must meet the statutory definition of the term "contractor."  Section 1 of the Act defines a "contractor" as:

"[a]ny person who shall by any contract or contracts, express or implied, or partly expressed or implied, with the owner of a lot or tract of land, or with one whom the owner has authorized or knowingly permitted to contract, to improve the lot or tract of land or for the purpose of improving the tract of land."  770 ILCS 60/1(a) (West 2006).

There is no dispute that the parties entered into a contract.  The question is whether the contract was for the improvement of the site.  Section 1(b) provides in pertinent part as follows:

"As used in subsection (a) of this Section, 'improve' means to furnish labor, services, material, fixtures, apparatus or machinery, forms or form work in the process of construction where cement, concrete or like material is used for the purpose of or in the building, altering, repairing or ornamenting any house or other building, walk or

11

sidewalk, *** or fill, sod or excavate such lot or tract of land, or do landscape work thereon or therefor; or raise or lower any house thereon or remove any house thereto, or remove any house or other structure therefrom, or perform any services or incur any expense as an architect, structural engineer, professional engineer, land surveyor or property manager in, for or on a lot or tract of land for any such purpose; or drill any water well thereon; or furnish or perform labor or services as superintendent, time keeper, mechanic, laborer or otherwise, in the building, altering, repairing or ornamenting of the same ***." 770 ILCS 60/1(b) (West 2006).

"The focus of the inquiry to determine whether a mechanic's lien should be granted is whether the work performed has enhanced the value of the land to be charged with the lien." Cleveland Wrecking Co. v. Central National Bank, 216 Ill. App. 3d 279, 285, 576 N.E.2d 1055 (1991).

Illinois courts have held that services that merely maintain rather than improve property are nonlienable activities. In Watson v. Watson, 218 Ill App. 3d 397, 578 N.E.2d 275 (1991), the court held that the payments and advancements for federal estate tax installments, county real estate taxes and farm operating loans did not enhance the value of the farmland but merely

12

preserved its value. Watson, 218 Ill. App. 3d at 400. In Lyons Savings v. Gash & Associates, 279 Ill. App. 3d 742, 665 N.E.2d 326 (1996), the court found that scrubbing and sealing of the tile and the grout on walls and floors constituted nonlienable maintenance, where there was no evidence that the work was necessitated by other lien claimants. Lyon Savings, 279 Ill. App. 3d at 747-48.

The plaintiff asserts that the removal of the drums containing hazardous waste was not mere maintenance but enhanced the value of the land. In Cleveland Wrecking Co., the defendant argued that the removal of debris from a demolition site was not a lienable activity. The appellate court disagreed. The court distinguished Robinette, inter alia, on the basis that the plaintiff there merely removed debris from a building someone else demolished. In contrast, the plaintiff's work in Cleveland Wrecking Co. included both the demolition and the removal of the debris in order to make way for new construction and therefore was an integral part of the overall plan to improve the property. Cleveland Wrecking Co., 216 Ill. App. 3d at 287. In the instant case, the plaintiff was only involved in the removal of debris, already contained.

Subsequently, in Midwest Environmental Consulting & Remediation Services, Inc. v. Peoples Bank of Bloomington, 251

13

Ill. App. 3d 256, 620 N.E.2d 469 (1993), the reviewing court
rejected the defendant's argument that the charges for disposing
of the contaminated soil at a landfill were separate from the
expenses incurred as a result of the removal of storage tanks and
contaminated soil and the hauling away of the contaminated soil
from the premises.  The issue was waived because it was never
raised in the trial court.  However, waiver aside and citing
Cleveland Wrecking Co., the reviewing court found as follows:

> "[T]he disposal of the removed contaminated soil is an
> integral part of the overall plan to improve the land and is
> lienable under the Act. [Citation.]  The activity of
> removing the soil is not separable from disposing of it.
> Once removed, it must be disposed of in some fashion.  If
> there is a cost which is incurred as a result, that cost is
> part of the removal of the soil." Midwest Environmental
> Consulting & Remediation Services, Inc., 251 Ill. App. 3d at
> 262.

The plaintiff's reliance on Midwest Environmental Consulting
& Remediation Services, Inc. is misplaced.  In that case, there
was no dispute that the removal of the underground storage tanks
and the contaminated soil was done to improve the property.  The
removal of the storage tanks and excavation of the contaminated
soil necessitated the removal and disposal of the contaminated

14

soil from the premises.  In the present case, the plaintiff did not perform the work that resulted in the filling of the drums with the hazardous waste. It made no changes to the structure of the building or its land either by repair or demolition other than to facilitate waste removal.  It merely removed and disposed of the drums, already filled with the waste, and performed incidental cleaning activities.  None of these activities were shown to be part of an overall plan to improve rather than simply maintain the property.

We find the decision in TPST Soil Recyclers of Washington, Inc. v. W.F. Anderson Construction, Inc., 91 Wash. App. 297, 957 P.2d 265 (1998), to be instructive.  In that case, the property owners contracted with Anderson to remove and replace fuel storage tanks on the property.  After discovering contaminated soil, Anderson contracted with the plaintiff to haul away and dispose of the contaminated soil.  The plaintiff removed the soil and recorded a mechanic's lien against the property for the unpaid contract.  The trial court granted summary judgment to the defendant.  The plaintiff appealed.

Relying in part on Cleveland Wrecking, the reviewing court held that the plaintiff's role in merely removing the debris did not involve it in the overall scheme to improve the property. Therefore, the plaintiff's work did not entitle it to a

15

mechanic's lien on the property. TPST Soil Recyclers of Washington, Inc., 91 Wash. App. at 301-02, 957 P.2d at 267.[1] Likewise, in the present case, the plaintiff's activities were limited to removing and disposing of the hazardous waste.

The plaintiff relies on Midwest Asbestos Removal Service, Inc. v. Crown Cork & Seal Co., No. 90 C 7010 (N.D. Ill. January 25, 1993). In that case, the district court held that the removal and hauling away of asbestos from a building fell within the meaning of the Act. According to the testimony at trial, the plaintiff removed asbestos ceiling tiles and drain wrappings to comply with OSHA[2] and environmental laws. There was expert testimony that the value of the property was significantly less with the asbestos tile and pipe wrapping present and that the value of the building would improve with the removal of the asbestos. Describing the asbestos removal as both a repair and an improvement, the court found that the removal improved the premises, and therefore, the work performed was within the meaning of the Act. Midwest Asbestos Removal Service, Inc., slip op. at ___.

---

[1]While federal decisions and those of our sister states are not binding on this court, we find them instructive in this case.

[2]Occupational Safety and Health Act (29 U.S.C. §651 (____).
.

Midwest Asbestos Removal Service, Inc. is distinguishable. The decision in that case was reached after a trial on the merits, not at the summary judgment stage. Moreover, in the present case, the plaintiff failed to offer evidence that its work improved the property, such as evidence of the value of the site prior to and after the work it performed.

We conclude that the activity of removing and disposing of drums containing hazardous waste, in and of itself, does not constitute an improvement to real property so as to be a lienable activity under the Act. As there was no evidence that the plaintiff's work was part of an overall plan to improve the property, its work was not a lienable activity under the Act.

Finally, even if we were to determine that some of the activities performed by the plaintiff were lienable, Illinois case law supports the proposition that "where a lump sum contract includes both lienable and nonlienable work, and such items cannot be separated, the entire lien must fail." Cleveland Wrecking Co., 216 Ill. App. 3d at 287. In the present case, the circuit court granted the plaintiff the opportunity to file an amended complaint apportioning the work. However, the plaintiff did not do so. Now, on appeal, the plaintiff maintains that its work can be apportioned. By failing to amend its complaint in the circuit court, the plaintiff has waived this argument. See

17

No. 1-07-2369

Purmal v. Robert N. Wadington & Associates, 354 Ill. App. 3d 715, 730, 820 N.E.2d 86 (2004) (the plaintiff waived right on appeal to seek leave to amend her complaint where she chose to stand on her complaint and did not seek leave to amend in the circuit court).

We conclude that the circuit court did not err in granting summary judgment to the defendants on the mechanic's lien counts of the complaint. The circuit court's order granting partial summary judgment to the defendants is affirmed.

Affirmed.

R.E. GORDON, P.J., and GARCIA, J., concur.